# H. A. PIERCE v. T..H. SCOTT, ET AL.

1. CONSTRUCTION OF CONTRACTS: *Partnership: Conditional Sale.*
   Pierce and the appellees entered into an agreement, by which Pierce engaged to put in $3000 to $5000, as he might deem best, to the founding and promoting a newspaper, provided the appellees should put in, to aid the enterprise, the sum of $2000, which should represent a proportionate amount of the stock of said business. Pierce was to conduct the editorial management of the paper, and give it his best abilities and influence. He was, also, to keep an accurate record of all expenditures, in a set of books provided for that purpose. Scott and the other subscribers were to pay their subscriptions as the same should be required to pay rents, materials and other expenses incident to the enterprise, and Pierce was to have the privilege of refunding all or any of the sums subscribed and paid in, within one year from such payments, with interest thereon, and might then assume sole proprietorship of the paper; but, until such sums should be refunded, they should stand as so much stock in the business and paper. *Held,* in a bill against Pierce for an account and distribution of the profits: *First,* That the agreement constituted a partnership, and the last clause was a conditional sale of the appellee's shares to Pierce, upon payment to them of their money, and interest, in a year. *Second,* That time was of the essence of the contract, and that he could not claim to purchase, after the year. *Third,* That the interest of the parties in the profits was in proportion to the amounts paid in by them. *Fourth,* That Pierce, having failed to keep books, was liable, to the strictest account of the profits which the proof would justify. *Fifth.* He could not, under the agreement, claim compensation for his services as editor, etc.

2. MORTGAGE: *Nesessary elements of.*
   There can be no mortgage without something conveyed by the mortgagor to the mortgagee, and a debt to be paid.

3. MASTER IN CHANCERY: *Should act only on proof, in taking account.*
   In taking an account, the Master in Chancery should not act on his own knowledge, or the unsworn statements of others, but as a jury, solely upon the evidence adduced.

APPEAL from *Sebastian* Circuit Court in Chancery.
Hon. *James A. Yantis,* Special Judge.

## STATEMENT.

This suit, brought in the Circuit Court at Fort Smith, by the appellees, against the appellant, was founded upon the following instrument:

"Memoranda of agreement made and entered into this day, by and between H. A. Pierce & Co., of the first part, and the parties whose names are hereto signed, of the second part, witnesseth: Whereas, the said H. A. Pierce & Co. propose starting a newspaper at the city of Fort Smith, Arkansas, to be issued daily, or weekly, as may be deemed best; and the said Pierce & Co., represented by the said H. A. Pierce, agree to put into said business the sum of from $3000 to $5000, as he or they shall find necessary; *Provided*, the said parties of the second part shall also put in, to aid said enterprise, the sum of $2000, that shall represent a proportionate amount of the stock of said business. That said Pierce shall conduct the editorial management of said newspaper, give it his best abilities and influence; said paper to be known as the Arkansas Patriot, to be thoroughly Republican in politics, devoted to securing harmony and unity of action in the Republican party, and thereby insuring its success.

"That for the purpose of securing the proper expenditure of the money hereinafter subscribed in aid of said enterprise, the same shall be paid into the hands of ――――, who shall only pay the same out for materials actually furnished for said printing office and newspaper.

"That said Pierce shall keep an accurate record of all expenditures, in a set of books provided for that purpose, which books shall always be open to the inspection of the parties hereto agreeing.

"The said parties of the second part agree to pay the sums set opposite their names, as the same may be required,

in the purchase of materials, rents and other expenses connected with said paper.

"It is further agreed that said Pierce shall have the privilege of refunding any, or all, of said sums subscribed and paid in, as aforesaid, within one year from the date said sums were paid, with interest thereon, and may then assume sole proprietorship of said paper. But until said sums are refunded, as above, the same shall stand as so much stock in said business and paper.

"Witness," etc., "this third day of June, 1871."

Here follow the signatures.

For the rest, the opinion sufficiently states the case.

*Clendenning & Sandels*, for appellant:

1.  The Chancellor totally disregarded the evidence produced by defendant.

2.  Many sums are charged appellant, without an atom of proof, and based alone upon the experience of the special master in running a newspaper.

3.  The Chancellor *charges* Pierce with the $3000 put into the concern, when he should have been *credited* with it.

4.  By the agreement there was no stock company or partnership, and the declaration that until Pierce repaid Scott and Patterson the amounts advanced, they should hold stock, etc., was nothing but a mortgage *pro tanto*, to secure payment.

*Thomas Marcum*, for appellee:

The second deposition of Pierce, taken without leave of the court, should have been excluded. *Bentley's Master in Ch'y.*, *p.* 17.

The presumptions are all against appellant, because he failed to keep proper books, or to produce them, or allow

them produced. Entries, to be competent, must be verified by those who made them. *Phillips' Ev.*, *p.* 690. Non-production of books is a strong circumstance against the party. *Ib.*, 700. See further, as to admission of books, and proof of entries, *Ib.*, 694–5–6–7.

Argues upon the evidence and findings, and insists that the decree was proper.

EAKIN, J. This is a bill by two of the promoters of, and subscribers to, a newspaper enterprise, against the editor, principal capitalist and sole manager, to enforce an account, and a distribution of the assets among them, in proportion to the amount of their several subscriptions. The bill is filed in behalf of themselves and all others interested, who may come in and make themselves parties. It charges that all the subscribers were, by agreement, to be shareholders in the enterprise to the extent of, and in proportion to, their subscriptions. There was a demurrer for want of equity, and also for a defect of parties defendant. This was not insisted upon, however, and the sole defendant answered. As it appears from the subsequent proceedings, that only the parties before the court had paid anything into the concern, it follows, from the articles of agreement, that no others can have any interest.

The first and most important question of law arises upon the construction of the articles. The appellant contends that they do not make either a joint stock company or a partnership, but that the stipulation therein, that each subscriber should hold stock to the amount of the sums paid, until he should be repaid by defendant, was only a mortgage of so much stock to secure repayment. Several important elements in a mortgage are wanting. There was no loan by the several subscribers to Pierce, nor any *convey-*

1. CONSTRUCTION OF CONTRACTS: Partnership: Conditional sale.

*ance*, by him to them, of any stock or interests in the concern as a security for any debt. It was a joint undertaking in which Pierce (under the style of H. A. Pierce & Co.) united with others to raise a joint fund for its object. Their respective shares were their own originally, for which they owed each other nothing. Their ownership was born with the enterprise itself, and sprung from the investment of their own capital. They did not derive their interest from each other, and, in case of loss of their capital by failure of the enterprise, had no claim upon each other for repayment. It was, in fact, a conditional sale by complainants to Pierce of their respective shares, upon payment to them of their money, with interest, in the course of a year. Time was, from the nature of things, of the essence of this contract. It would not have been reasonable to have allowed Pierce to delay indefinitely, and then exercise his option of purchasing or not, as he might find the business lucrative or disastrous. He allowed the opportunity to pass, and cannot now claim the privilege, nor object to becoming chargeable with a pro rata share of the capital and profits which

2. MORT-GAGE: Elements of.
came to his hands. There can be no mortgage without something conveyed from the mortgagor to the mortgagee, and a debt to be paid. The court properly held that there was a partnership, and that the same should be dissolved, and an account taken.

Neither of the two interlocutory orders made for a reference, fixed the rates, or proportion, in which the plaintiffs were to share in the distribution of the assets. That seems to have been left to the master to determine for himself, upon his own construction of the contract. It was not the better practice, as it was purely a question of law, and all such should be first settled by the Chancellor, so far as they can be, on the pleadings and evidence before him. The plaintiffs claimed, in their bill, a pro rata according to their

H. A. Pierce v. T. H. Scott et al.

respective amounts *subscribed*. It was not all paid in, and it seems to have been contemplated that it might not be necessary to do so ; but that a less amount might, perchance, serve the purpose of the enterprise. The last clause of the articles makes it clear that their interests were to be in proportion to the amount subscribed 'and *paid in*. As this proportion, however, was actually taken as the basis of the decree, the omission was not important.

All other questions arise on exceptions to the report of the master, as finally reformed and confirmed by the court. As presented by appellant's brief, they are as follows :

1. That there was a total disregard of the evidence adduced by the defendant.

The agreement itself constituted the partnership, and the proof of the amounts paid in originally by plaintiffs was sufficient. They were shown by the receipts of defendant, one to Patterson for $150.00, and to Scott for $278.70, and upon these amounts the shares of complainants were apportioned. As to the repayment of any part of these amounts, and as to many other matters connected with the accounts, the evidence was conflicting ; and the master, in taking the account, and the court, in modifying it, were not bound to consider the evidence of defendant as conclusive. We find no error upon this point.

2. That the master, as to many of the items, acted without evidence, but was governed by his own experience in newspaper management.

As regards the report, this exception was well founded. Many of the estimates of work done, and the value of materials, are founded upon the master's own knowledge, of the price lists of the times, and, as he says, the opinions of those most competent to judge. So far as the measurement of the work is concerned, and the estimate of it, *where legal prices are fixed*, that might be legitimate, but as to other

matters, a master should not act upon his own knowledge, or upon his best judgment, derived from conversation with others. In deciding upon facts, his position is analagous to that of a jury, and the evidence upon which he reaches conclusions, should be properly taken on oath, and returned with the report, to be examined by the Chancellor upon exceptions. Values of work and of materials should be proved as other facts, and not collected by the master from his own experience, or from the price lists of the times, or from consultations with others. This would be dangerous, in the first instance, and preclude a party injured from the proper mode of correction. The master could take judicial notice of such things as courts might, and of prices fixed by law, and might himself inspect and measure work, in the files, provided the files themselves be returned with his report, or be accessible to the court. Otherwise, he must act upon some proof, the best, under the circumstances, that can be adduced.

*Partner. failing in obligations to keep correct books, liable to strictest account.* As it was the duty of defendant to keep books, and produce them, if there be any failure by them to show the full nature and history of the business, the defendant is liable to the strictest account which the nature and character of the business, upon the *proof* as to that and its value, will justify.

There was no error in refusing to allow defendant anything for his services as editor or manager or for literary work done by others. There was no stipulation for that in the original agreement, and no implied contract as to that, arises from the nature of the agreement.

There were, in this case, two references and two successive accounts, to both of which exceptions were made and sustained. It was reasonable to suppose that all legal light had been shed upon the transaction which could be obtained, and the Court undertook the statement of the account for itself.

Obviously, from the claim of defendant to exclusive owner-
ship and from the imperfect manner in which his accounts
were kept, and from the want of clear and explicit state-
ments of amounts received and expended, and from lapse
of time, an exact accounting has become and remains im-
possible.   In such cases it is the duty of Courts of Equity
to approximate substantial justice as nearly as may be.

Passing over the two reports, save in so far as they afford
material for estimates, we will consider the statement finally
made by the Court, and which seems to be as well supported
by the evidence as the nature of the case will admit of.   The
report of the master charged defendant with a balance of
$12,975.25.   The statement of the Court reduces this to
$7,565.15, reached as follows:   He is charged with the
original capital $3,428.70, sums received for publishing de-
linquent tax lists $5,138.75 ; for other legal advertisements
$2,581.50 ; and from other work of all kinds $2,400, making
in all $13,548.95.

He is allowed credits for overcharge in tax lists $648.75 ;
cash paid for paper and other material of all kinds for two
years, $1,200 ; office rent $960 ; cash paid printers, $2,975.05 ;
other incidental expenses $200, in all $5,983.80.

The balance is divided to complainants in proportion, as
shown in a former portion of this opinion.   The modification
was very favorable to defendant, and a review of the evidence
discloses, that, in fixing these sums, the court has found
some firm ground on legal evidence for each, and that it has
been tender of the rights of appellant.

The only objection which could be made to the account is,
that it seems to throw the loss, by wear and tear, of the fur-
niture and machinery of the office, on the defendant ; but
the evidence shows that it could not have been great, and
there was no distinctive proof to show what it was.   All of
it was left in his hands, and there was no ground for the claim.

:that he should be credited with the $3,000 of his own money which went to purchase it.' It was firm money and was invested in firm property.

In other respects defendant has been liberally treated in the estimates, both as to charges and credits. To review it all would serve no useful purpose ; substantial justice seems to have been done upon the whole case and any better or more satisfactory disposition of the tangled mass of confused statements, and partial evidence, is utterly hopeless. It is the defendant's own fault that the accounts have not been clearly kept.

Affirmed.