COLE v. COLE.

Opinion delivered May 31, 1915.

PARTNERSHIP — AGREEMENT — COMPENSATION — DISSOLUTION.—A., B. and C., entered into a partnership. B. died and C. became insane, but A. continued to operate the partnership business. *Held,* where A., after the happening of these events elected not to wind up the affairs of the partnership and dissolve it, as he had the right to do under the law, but chose rather to continue its operations, he will not be heard to say that the terms upon which he entered the partnership were not sufficiently favorable to him and that he should have a compensation not originally agreed upon.

Appeal from Craighead Chancery Court; *N. F. Lamb,* Special Chancellor; affirmed.

*J. C. Hawthorne* and *D. K. Hawthorne,* for appellants.

The ordinary rule is not disputed that one partner can not charge another for services rendered the partnership unless by special agreement; but there are exceptions to this rule which are well recognized, as that where it can be fairly and justly implied from the course of

dealing between the partners, or from circumstances of equivalent force, that one partner is to be compensated for his services, his claim therefor will be sustained. 24 N. W. 129; 49 N. W. 846; 5 N. W. 243, 251.

It was within the scope of the partnership business for Y. A. Cole, Sr., to contract with appellant to pay him for his services in managing the firm business. 66 So. 694; 145 S. W. 194; 92 Ark. 271.

In the absence of an express agreement to pay appellant a salary, it can be clearly implied from the course of dealing the partners adopted, and from other circumstances of equivalent force, that he is entitled to compensation for his services, and he should be allowed it. *Supra;* 68 N. E. 199; 35 S. W. 921; 11 So. 745; 147 N. W. 148; 23 Ark. 566.

*M. P. Huddleston,* for appellee.

1. A partner can not charge for services rendered in the business or receive any salary for his services, unless there is a special agreement to that effect, or unless an agreement may be fairly inferred from the course of the business. 23 Ark. 566; 135 Cal. 561, 17 Pac. 1054; 17 L. R. A. (N. S.) 384 and note p. 386.

2. Inequality of services rendered does not entitle a partner to extra compensation. 17 L. R. A. (N. S.) 391, note.

SMITH, J. Appellee G. B. Cole, by his guardian, commenced this suit on November 9, 1910, to dissolve the copartnership known as the Jonesboro Wagon & Manufacturing Co., and to distribute its assets. This copartnership was formed on January 1, 1902, and was then composed of appellee, who owned one-half interest, and of Y. A. Cole, Sr., and Y. A. Cole, Jr., who each owned one-fourth interest. Y. A. Cole, Sr., and Y. A. Cole, Jr., were father an son, and Y. A. Cole, Sr., was the uncle of appellee, G. B. Cole. The business was operated by these partners without any contract or understanding as to compensation for their services except that each partner drew on the partnership bank account for such money as he required for his personal use. G.

B. Cole became insane in May, 1907, but recovered sufficiently by the latter part of June to return to his work, but he soon became insane again and retired permanently from the business. Thereafter Y. A. Cole, Sr. became less and less active in the management of the affairs of the copartnership, and finally ceased to give the business any attention and died June 9, 1910. Y. A. Cole, Jr., continued the business until this suit was filed, and was appointed receiver and wound up the partnership affairs as such. After appellee became insane, and after the responsibility for the management of the partnership affairs had fallen on appellant, he complained to his father that it did not look right for him to stay at the factory and manage it and receive no salary for his labor. Appellant testified that his father said : ''I think so, too ; go ahead and do the best you can.'' Speaking of his father, he further testified : '' From time to time he would come over and I would talk to him about it, as often as I would get a chance, and there was a time or two that I would get the subject right down to the point in regard to how much salary I ought to have. I reckon he thought I wanted a little more than he thought I ought to have.'' He further testified that on another occasion he told his father he thought he should have a salary of $150 per month, but his father told him that was too much, and that while no agreement was ever reached about his salary he supposed he would be paid for his services, and continued in charge of the business because of that expectation. There was testimony to the effect that Y. A. Cole, Sr., had stated to the employees about the plant that appellant was to be paid a salary, and that his services were reasonably worth $125 per month. The partners adopted at the beginning a very loose and inaccurate system of bookkeeping, which was continued by appellant, and it became necessary to employ an expert accountant to state the account between the partners, and there is now a wide difference of opinion as to the result of appellant's management of the business. However, the heirs of Y. A. Cole, Sr., were made parties to this

suit, and the court below stated the account between the partners, and the only item questioned on this appeal is appellant's claim for salary for the thirty-eight months during which he had charge of the business. The court found that, pursuant to the agreement that the partners might draw money as they needed it, Y. A. Cole, Sr., had drawn $300; that $1,152.50 had been drawn by and for G. B. Cole, while appellant had drawn $2,364.50, which sum he admits should be credited against the allowance of $4,750 which he claims as salary, and the difference between these two amounts forms the subject-matter of this appeal.

We think the court below allowed appellant all he was entitled to receive, for the reason that the proof is insufficient to show any right on his part to charge for his services. The law of this subject is stated in Modern American Law, Vol. 9, section 76, as follows:

"A partner is entitled to participate in the profits realized in a partnership business in the proportion agreed upon by the partners. Since he, by attending to the firm business, is conducting but his own affairs, he is not entitled to any extra compensation unless a special agreement to that effect has been made, or unless extra trouble has been caused to him by his copartner's neglect of duty. Where the partnership agreement has provided for extra compensation of one or more of its members the agreement controls. This agreement may also anticipate such events as the death or sickness of a member and may provide a compensation to the other members for the extra work which will be caused to them by such event. If no such agreement is made, the sickness of a copartner will be considered as a risk which is incidental to the partnership relation and which is, therefore, assumed by all the partners. 'Even where a liquidating or surviving partner settles up the business, it has been repeatedly held that he is not entitled to compensation for doing so, although in such case he performs all the services.' "

An extensive note will be found to the case of *Williams* v. *Pederson*, 17 L. R. A. (N. S.) 384, citing many authorities on this subject.

Two events happened in the history of this copartnership, either of which would have worked a dissolution of the firm had appellant so desired. The first of these events was the insanity of G. B. Cole, and the second was the death of Y. A. Cole, Sr. Notwithstanding these events appellant did not dissolve the firm, but continued to carry on the business, and the presumption must be indulged, despite his expectations to the contrary, that he did so pursuant to the original articles of agreement.

One witness testified that he heard G. B. Cole say, after he had ceased to perform any services or to discharge any duties in connection with his copartnership, that appellant was drawing a salary for his services. But it was not shown whether G. B. Cole was referring merely to the sums which the partners had been drawing for their personal use or not, nor does it appear that G. B. Cole had recovered his reason. Moreover, this remark was not made in the presence of appellant, and it was not shown to have been communicated to him. It is true appellant testified that his father agreed with him that it would be right for him to have some compensation for his services, but no agreement was ever reached with his father as to what the compensation should be. Besides, any understanding between appellant and his father about salary would have constituted an amendment to the articles of copartnership, which would not have been binding on the insane partner.

If, for reasons satisfactory to himself, appellant elected not to wind up the affairs of the copartnership and dissolve it, as he had the right to do under the law, but chose rather to continue its operations, then he should not be heard to say that the terms upon which he entered the partnership were not sufficiently favorable to him and that he should have a compensation not originally agreed upon. *Pierce* v. *Scott*, 37 Ark. 308; *Haller* v. *Willamowicz*, 23 Ark. 566.

Upon filing the bill for the settlement of the affairs of this copartnership appellent was appointed receiver, and wound up its affairs, and was allowed a thousand dollars as compensation therefor. We think no error was committed in rejecting appellant's claim, and the decree is therefore affirmed.