BATSON *v.* DRUMMOND.

Opinion delivered March 26, 1923.

1. PARTNERSHIP—WHEN CREATED.—Where plaintiff sold to defendant a half interest in a hotel lease and furniture, taking notes in payment, each party agreeing to devote his entire time to the business of the hotel and to bear one-half of the expenses and to share the profits equally, a partnership was created.

2. PARTNERSHIP—DISSOLUTION.—Where plaintiff and defendant were partners in a hotel business, plaintiff being the day man and defendant the night man, plaintiff could not dismiss defendant as night man by instructing the night clerk that, if defendant appeared, the night clerk was nevertheless to stay on duty.

3. PARTNERSHIP—CHARGE FOR SERVICES.—In the absence of contract, a partner is not entitled to charge anything by way of salary

for his services; but, if salaries are to be paid, the presumption is that all the partners are to receive the same payment where they are equal partners.

4. PARTNERSHIP—OPERATING EXPENSES.—Where plaintiff and defendant entered into an agreement to operate a hotel, the firm could not be charged with the expense of operation for a time preceding the formation of the partnership.

5. PARTNERSHIP—ACCOMMODATIONS TO GUEST OF PARTNER.—Where plaintiff and defendant operated a hotel as partners, and plaintiff furnished room and board to a guest without charge, the customary rate for such accommodation was properly chargeable against plaintiff.

Appeal from Union Chancery Court; *J. Y. Stevens,* Chancellor; reversed.

*McKay & Smith, Mahony & Yocum,* and *Saye & Saye,* for appellant.

The evidence showed a partnership existed between the parties. *Roach* v. *Rector,* 93 Ark. 521; *Meehan* v. *Valentine,* 145 U. S. 611; *LaCotts* v. *Pike,* 91 Ark. 26; *Wilson* v. *Todhunter,* 137 Ark. 80; *First National Bank* v. *Stokes,* 134 Ark. 368; *Kent* v. *State,* 143 Ark. 439; *Wescott* v. *Gilmore,* Ann. Cas. 1916-E, 437; 150 Pac. 777, 20 R. C. L. 830, par. 30, 35; *Miller* v. *Hughes,* 10 Am. Dec. 719; *Richards* v. *Grinnell,* 50 Am. Rep. 727. The court erred in division of the profits. 20 R. C. L. 877, par. 90; *Underwood* v. *Overstreet,* 188 Ky. 562, 223 S. W. 152; 20 R. C. L. 1023, par. 265; 1 Jones, Blue Book on Evidence, 268; *Raines* v. *Weiler,* 101 Kan. 294, L. R. A. 1917-F, 571, and note; *Maynard* v. *Maynard,* 147 Ga. 178, L. R. A. 1918-A 81; *Pearce* v. *Scott,* 37 Ark. 308; *Haller* v. *Willamowicz,* 23 Ark. 566; *Cole* v. *Cole,* 119 Ark. 48; *Johnson* v. *Jackson,* 114 S. W. (Ky.) 260. Parol agreements and prior conversations merged in written contract, which can not be contradicted or varied by parol evidence. 3 Jones, Blue Book on Evidence, § 434; Clark on Contracts, 490; 2 Elliott on Contracts, sec. 1620; *Morris* v. *S. W. Supply Co.,* 136 Ark. 507, 206 S. W. 894; *Barfield Mercantile Co.* v. *Connery,* 150 Ark 428, 234 S. W. 481; *Sims* v. *Best,* 140 Ark. 384, 215 S. W. 519.

None of the indebtedness and bills made prior to formation of partnership should have been charged to it, nor should appellee's testimony as to profits have been regarded conclusive. *Carter* v. *Road Imp. Dist.*, 238 S. W. (Ark). 71; *Harris* v. *Bush*, 129 Ark. 369. 196 S. W. 471. Appellee's conduct was not in good faith as a partner, nor could he dissolve the partnership. Property ordered sold not identified by decree. Partnership should have been dissolved and business wound up by court. 20 R. C. L. 953, sec. 177; *Johnson* v. *Jackson*, 114 S. W. (Ky.) 260, 20 R. C. L. 958, sec. 182, note; A. S. R. 423, 60 A. S. R. 424; *Howell* v. *Harvey*, 5 Ark. 270, 69 Am. Dec. 376, 20 R. C. L. 956, sec. 180. Receiver should have been appointed. 20 R. C. L. 966, sec. 188; *Reddlin* v. *Whitehill*, 135 U. S. 621, 23 R. C. L. 30; *Jones* v. *Weir*, 66 Atl. 550; *Childers* v. *Neeley*, 34 S. E. 828; 5 Pomeroy's Equity Jurisprudence, 145, sec. 81. Appellant is entitled to an accounting, regardless of whether a partnership existed.

*E. W. McGough* and *W. J. Goodwin*, for appellee.

No partnership existed between the parties. *Buford* v. *Lewis*, 87 Ark. 412; *Roach* v. *Rector*, 93 Ark. 521, lays down the true test as recognized in this State. *Johnson* v. *Rothchilds*, 63 Ark. 518, 41 S. W. 996; *Recker* v. *Robbins*, 74 Ark. 437, 86 S. W. 667; *Paris Mercantile Co.* v. *Hunter*, 74 Ark. 615, 86 S. W. 808; *Culley* v. *Edwards*, 44 Ark. 423; 30 Cyc. 366; *Herman Kahn Co.* v. *Bowden*, 80 Ark. 23, 96 S. W. 126; *Oliver* v. *Gray*, 4 Ark. 425; *Haycock* v. *Williams*, 54 Ark. 384, 16 S. W. 3; *Harris* v. *Umstead*, 79 Ark. 499, 96 S. W. 146; *Neill* v. *Shamburg*, 158 Pa. 263, 27 Atl. 992; *St. John* v. *Cooks*, 63 Hun. 460, 18 N. Y. Supp. 419. Appellee had a right to foreclose his lien. Findings of chancellor are not disturbed unless against the preponderance of the testimony. *Irvin* v. *Dugger*, 142 Ark. 102. Forfeiture occurred on May 1, instead of June 1, 1922.

SMITH, J. On November 26, 1921, appellee and two other gentlemen leased the Garrett Hotel in the city of El Dorado, and appellee later acquired the interests of

his associates in the lease, and on April 1, 1922, he sold a half interest therein to appellant. The sale was evidenced by a contract in writing, and both parties agree there was a contemporaneous parol agreement governing the operation of the hotel, although they differ as to the terms of this parol agreement.

The relevant portions of the written contract are as follows: " * * * In consideration of the sum of $7,500, $2,500 cash in hand paid, receipt whereof is hereby acknowledged, and $5,000 represented by equal monthly notes in the amount of $1,000 each, payable on the first day of May, June, July, August, and September, 1922, respectively, the said party of the first part does hereby bargain, grant, sell, assign and convey unto the said S. H. Batson a one-half (½) interest in and to all the goods, chattels and effects in and about or used in' connection with the Garrett Hotel, El Dorado, Arkansas, together with a one-half (½) interest in said lease aforesaid. To have and to hold the said goods, chattels and effects unto the party of the second part, his executors, administrators, and assigns, and to his own use, for the remainder of said term of said lease, and to have and to hold all personal property unto the said S. H. Batson, forever.

"And the said N. W. Drummond, party of the first part, does hereby covenant with and to the said party of the second part, that he is the lawful owner of said goods, chattels, and effects; that they are free and clear from all incumbrances; that he has a good right to sell the same; that he will warrant and defend the same against the lawful claims and demands of all persons. The said S. H. Batson undertakes and agrees with the said N. W. Drummond that, in consideration of the lease aforesaid, he will devote his full time and undivided attention to the business of said hotel. It is further agreed and understood that the said S. H. Batson hereby gives a lien on all of said personal property to the said N. W. Drummond to secure the full

payment of the purchase money hereinbefore mentioned.''

Each of the five notes referred to the others, and contained an accelerating clause, whereby all matured upon failure to pay any one of them. Appellant Batson did not pay the notes falling due in May and June, and on June 7th appellee brought suit for a judgment on the notes and to foreclose the lien reserved to secure their payment.

Appellant answered and alleged, in effect, that he and appellee had formed a copartnership to operate the hotel, but appellee had excluded him from the business, and had appropriated the profits of the business. It was alleged in the answer that appellant's share of the profits would more than have paid the notes which had matured at the time the suit was brought, and there was a prayer that a master be appointed to state an account between the parties, and that a receiver take charge of the business. The court did not appoint either a receiver or a master, but did undertake to state the account between the parties, and, after doing so, credited the sum found due to appellant on the notes, rendered judgment for the balance due on them, and ordered sale of appellant's interest in the property in satisfaction thereof. Appellant executed a supersedeas bond and duly perfected his appeal.

The first question in the case is whether a partnership existed between the parties, and we answer that question affirmatively. In the case of *Roach* v. *Rector,* 93 Ark. 521, the court laid down the following test of the existence of a partnership (quoting syllabus): ''As between the parties to an alleged partnership, the true test of a partnership is whether the parties actually joined together to carry on a trade or adventure for their common benefit, each contributing property or services and having a community of ownership in the property and of interest in the profits of the business.''

The written contract set out above lacks but little, if anything, of creating a partnership, although it does not so designate the relationship of the parties thereunder. But it was not essential that this should be done.

In explanation of the parol contemporaneous agreement, appellee testified that it was understood that no partnership was being formed; on the other hand, appellant testified that it was expressly agreed that a partnership was being formed; and we accept his version as correct. The parties testified about and agreed as to what their respective duties were to be, as defined by the parol contract, and this testimony confirms our conclusion that a partnership existed. Both parties were to devote their entire time to the hotel, each bearing an undivided one-half of the expenses incident to its operation and sharing equally the profits. Appellee was to be the day man, and appellant was to come on duty at 11 o'clock at night, relieving a clerk who had come on duty at 1 o'clock in the day.

On one occasion appellant did not show up to relieve the clerk, who went off at 11 p. m. After waiting until 1 a. m. appellee told the clerk on duty to stay on all night, and to tell the appellant, if he came on during the night, that he (the night clerk) had orders to stay on all night, thus virtually dismissing appellant. But a partner could not be thus discharged. Appellant testified that thereafter, although he continued to perform his duties, he was furnished no information about the finances of the business. Appellee testified that appellant had access to the safe where the books were kept, and could have had any information desired by an inspection of them.

The parties differ as to the parol agreement in regard to the salaries of the partners. Appellee testified that he was to be paid $250 per month, and appellant was to have only $42.50 per week. Appellant testified that nothing was said about salaries, and that the parol

agreement on that subject was that each partner should be allowed to draw necessary expense money, and be charged therewith. We accept appellant's version of the parol contract as more consonant with the written contract and the conduct of the parties, as each of them drew from the firm and was charged therewith.

In the absence of any contract on the subject, neither partner would be entitled to charge anything by way of salary for his services; but, if they were to be paid, and there was no express contract in regard to the sum to be paid, the presumption would be that they were to receive the same payment, as they were equal partners. *Cole* v. *Cole,* 119 Ark. 48; *Pierce* v. *Scott,* 37 Ark. 308; *Haller* v. *Willamowicz,* 23 Ark. 566; note to 17 L. R. A. (N. S.) 385.

After the parties had been operating the hotel for a few weeks appellee paid, with the funds of the copartnership, $1,020 balance due on the furniture, and he justifies that action by saying that he explained to appellant, when they made the parol agreement, that this item was outstanding, and would be paid out of the future earnings of the business. Appellant denies liability for this item, or any agreement that the partnership should pay it, and we must accept his version of that transaction, especially in view of the fact that the written contract set out above expressly warrants that the goods there sold (being those on which the payment of $1,020 was made) were free and clear from all incumbrances; that appellee had a good right to sell, and would warrant and defend the title against the demands of all persons.

It appears that appellee also charged the firm with the operating expenses of the hotel for the month immediately preceding the formation of the copartnership. There appears to have been no authority for that action, as appellant's agreement to share the expenses of operation would properly be limited to the period of time during which he was also sharing in the profits, and cer-

tainly so in the absence of a very definite agreement to the contrary.

Appellant did not pay the May note when it matured. Discord had already arisen between the partners, and appellant testified that he told appellee he would pay the note when the month's business had been audited and he had been given a statement thereof. Appellee admits promising to have an audit made, and he testified that he put in a telephone call for an auditor upon whom they had agreed, but he was unable to reach him. Appellant testified that the business was enormously profitable (El Dorado was at the time in the height of its oil boom), and he relied on appellee's promise to have the books audited, well knowing that his share of the profits would more than pay the notes; and when the June note matured he renewed his demand for an audit. Appellee expressed his willingness to have the books audited, but demanded immediate payment of the notes. Appellant asked for a few days' indulgence until he could send to Mississippi for the money to pay the notes, but this request was denied, and appellee elected to declare all the notes due, and brought this suit.

According to appellee's own admission, the net profits for April were $2,469.12, and for May they were $2,241.71, one-half of which would, of course, belong to appellant; but appellant had drawn against his share, and the balance due was insufficient to pay either of the notes maturing at the end of those months. According to appellant, his share of the profits was ample for that purpose.

The rate per day of rooms in the hotel was very high. The rate of a room furnished one of the clerks carried a rate of $5 per day. The use of this room was, of course, an operating expense to be charged to the expense account, but it shows how profitable the rooms were. It appears that appellee was furnishing room and board to a guest, without charge therefor, who had no duty in connection with the operation of the hotel. We per-

ceive no reason why appellee should not be charged the usual and customary rate for the accommodation of this guest. If this business was a partnership, and we so hold, then appellee had no right to furnish free accommodations to any one without being charged therewith.

The decree will be reversed, and the cause will be remanded, with directions to the court below to appoint a master to state an account between the parties, in accordance with the views here expressed, and to appoint a receiver to take charge of and wind up the partnership business.

There was a cross-appeal by appellee, but the issue there raised is concluded by what we have already said.