GREENFIELD v. PEAY.

Opinion delivered March 10, 1919.

1. ACCOUNT STATED—PLEADING.—In suit on account stated, there should be an allegation that the account had been stated, as the doctrine of account stated rests upon the ground that the cause of action is founded upon the express or implied promise to pay the amount that has been found to be due upon the accounting.

2. APPEAL AND ERROR—AMENDMENT OF PLEADING TO CONFORM TO PROOFS.—It is only where issues are clearly defined by evidence that courts will treat bill of complaint as amended to conform thereto.

3. EQUITY—REPORT OF MASTER—CONCLUSIVENESS.—A report of a special master should not be considered where findings are based on information obtained from other sources than the record evidence.

4. APPEAL AND ERROR—REPORT OF MASTER.—Where the report of a special master was erroneous, the fact that the court received it and overruled exceptions to it, can not be urged as reversible error where the decree clearly indicates that the court did not adopt the findings of the master.

5. CONTRACT—BREACH—DAMAGES.—In an action against a contractor to recover damages for failure to complete the work, the court did not err in dismissing the action where it was impossible to tell how much of plaintiff's work was done in completing the work according to plans and how much was done on extra work.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Morris M. Cohn* and *Louis M. Cohn,* for appellants.

1. The Nick Peay Construction Company abandoned the contract without justification or excuse and appellees are bound by the doctrine of account stated and rendered. No answer being received it is binding on defendants. 16 Ark. 202; 41 *Id.* 502; 47 *Id.* 541; 53 *Id.* 155; 55 *Id.* 376. A copy of the statement was attached to the complaint as an exhibit and no specific objection was made thereto or denial thereof. Nick Peay was left out of this suit because he had no means out of which the debt could be made. The complainants were clearly entitled to recover. Even if there was quicksand and no pin-piling, that did not excuse the nonperformance of the contract, since the contract did not contemplate an

abandonment for that cause and it did not render the contract impossible of performance. 172 U. S. 31 So. 739; 80 Miss. 162; 20 Ct. Cl. 238; 9 Wall. 161; 99 U. S. 30; 3 Pont. (Ala.) 231; 118 Ind. 68; 20 N. E. 499; 33 Iowa 422; 21 Pick. 417; 159 Mass. 317; 34 N. E. 1087; 20 Minn. 494; 39 Miss. 350; 19 Wend. 500; 61 Fed. 893. A claim to have defendant to do something or omit something that the contract does not require does not justify an abandonment by him. 70 Ill. 527 (where the coal played out); 40 Ind. 114 (where the house burned); 25 Conn. 530; 68 Am. Dec. 371 (where the schoolhouse was destroyed); 25 Ga. 24; 71 Am. Dec. 153 (where there was flood); 7 Ark. 123 (where there was sickness); 121 Pac. 649; 38 L. R. A. (N. S.) 692 (where there was sickness); 5 Ark. 140 (where there was an overflow); 29 Id. 323 (where there was war); 61 Id. 312 (where there was unusual expense); 16 L. R. A. (N. S.) 801 (where the weather was against the contractor); 14 L. R. A. (N. S.) 537; 83 N. E. 221; 231 Ill. 522 (where there was great hardship); 148 Fed. 594; 9 L. R. A. (N. S.) 1187 (where there was rise in price); 22 L. R. A. (N. S.) 364; 104 S. W. 1061; 101 Tex. 63 (where the plans were defective). The existence of quicksand did not preclude excavation. Nick Peay says that a number of the items in the statement are correct; they aggregate $3,691.60. There are a number of items for pay rolls for labor expended to complete the contract under the directions of Lund & Hill, the engineers. These pay rolls are sustained by the evidence as correct. There are other vouchers for coal, etc., not conceded by Peay, but the books and other evidence show they were correct. Copies of all these were sent to the construction company and the sureties. The cofferdam when the district took it was full of water and the pumping apparatus was wholly inadequate and they had to pump all the time. No change was made in the work except putting in additional piling in the wings, and for this proper allowance was made. Defendants were duly credited with the amount for the extra piling in the statement. Some of

the material left by Peay was washed off, some of the rock was wasted and a number of the corrugated iron rods was used around the cofferdam and some of the piling had to be cut off, causing waste. Not until this suit was brought did the construction company or Nick Peay or the sureties think of any defense, for during all the correspondence to all letters written by Lund & Hill no excuse was given by either Nick Peay or the sureties of any kind nor any reference to quicksand or piling in the wings. After the district had done the work in good faith and had rendered a full, explicit account of their suretyship to the principal and sureties, requiring an answer if the statement was not correct, no reply or criticism was ever made, nor any objection, and the doctrine of account stated applies here. An account presented and not objected to within a reasonable time becomes an account stated and can only be impeached for fraud or mistake. 41 Ark. 562; 47 *Id.* 541; 53 *Id.* 155; 68 *Id.* 534; 80 *Id.* 438.

The special master's report is not correct in its findings and plaintiff's exceptions should have been sustained, as it was based on conjecture and assumptions, for he took no additional testimony nor allowed counsel to argue to him. We shall only mention some of his findings which are untenable. No allowance is made for cleaning up after the work was done which the contract called for. No allowance for rent of boiler or pulsometer or other appliance or for fuel, nor for painting, which was provided for in the contract. The only allowance for excavation and back-filling for the floodgate, including work to take out the dirt washed back into the ditch around the cofferdam, while Nick Peay was doing nothing and had abandoned the work. The total amount allowed for this excavation and back-filling was $600, when it cost the district $2,117.58, thereby causing a loss of $1,517.58. How the master made his estimate is obscure. He assumed that the regular practice for the foundation of a floodgate was to go down to firm dry material. But in this case the testimony showed that the bottom of the

excavation was at all times wet and mucky, yet he said the extra expense in going to the extra depth was insignificant. His report is confusing. He ignores everything except Kelley's figures, a witness who was obviously prejudiced. His estimate as to pile driving, $462, is entirely wrong as shown by the evidence and no allowance was made for machinery or labor. He also overlooked the cost of the piling, $355.20, and cost of coal and machinery. So instead of $462 there should have been allowed $1,495.56. The building and removing forms and the cleaning up cost the district $9,943.55. Just why he allowed only $504 it is impossible to discover. His assumption as to cost of lumber for forms is purely arbitrary. The district actually paid $695 for lumber to the Farrell Company, yet the master only allowed $392. These are samples only, but they show how unfair the master was. In addition to the amounts allowed by the master we are entitled to the following:

For excavation and back-filling, including expenses for boiler, engine, fuel, etc. .................$1,778.56
Building and removing forms............................................. 303.00
Cost of reinforcing iron ..................................................... 77.42
Cost of concrete ..................................................................... 22.60
Rock disallowed ..................................................................... 402.54
Cement disallowed ............................................................. 346.00
Freight on sand, rock and cement.................................. 485.50
Gates ............................................................................................ 110.00

Total ...................................................................................$4,207.81

Even if the report is allowed to stand and it should not, it was error to dismiss the bill. The cost to the district of finishing the work as shown by the statements furnished the construction company and sureties was $11,460.98, and the difference between this and the contract price was $5,059.10. The master found the proper cost of the work thrown on the district to have been $6,586.15. Deducting this from the $11,645.25 actual cost leaves $5,059.10 and deducting this from the amount still due under the contract to the construction company, $5,876.44, leaves

$817.34. In any event even if the master's report is to stand appellants should have a decree for this $817.34 and it was error to dismiss the bill. The master had no right to act upon testimony outside the record including knowledge based upon his own investigations. 37 Ark. 308, 313; 16 *Id.* 616, 620-1; 151 S. W. 251. The master here was appointed by the court on its own motion over the objection of parties, hence his findings are merely advisory. 96 Ark. 281, 300-1; 92 *Id.* 359; Kirby's Digest, sections 6337-8. The decree is not in accord with any just or proper view. The board was not fairly treated and the decree should be reversed and a proper decree entered here.

*Cockrill & Armistead,* for Gordon N. Peay, appellee, and cross-appellant.

1. The case should be affirmed or dismissed for an insufficient record. It involves largely a matter of disputed figures and accounts. Appellant put in evidence certain vouchers in total amounts, each referring to the account it covered and which was a matter at issue as "attached hereto." Now these invoices are not in the record and their absence is a matter of importance, because the disputed facts involve dates, amounts, quantities, etc., which only appear from the invoices, also the question as to whether there is duplication of charges and payments of invoices and credits could only be settled by reference to the dates and quantities of items in the invoices. It is impossible to refer to and discuss many material matters of detail owing to the absence of these invoices from the record. An important item is the invoice for the payment of $695 worth of lumber which appellant charged against the contractor. It was material to see this invoice but it is not in the record. This is only one of many such omissions. These invoices were referred to in Hill's testimony as being attached to the voucher exhibits, but none of them are in the record and the judgment should be affirmed or the appeal dismissed.

2.    The suit was not upon a stated account as it was set up in the complaint or pleadings, it only appears in appellant's brief for the first time. If it had been plead it could be and was impeached for fraud, which is shown by the testimony.

3.    There is other irrelevant argument in appellant's brief and much discussion of and citation of many cases on the proposition that the principal contractor had no legal right to abandon the contract. · In the trial below we only referred to the causes of abandonment as incident in a chain of facts going to show fraud in the claims urged against us referred to later on.

4.    The decree below is also omitted from the appellant's abstract. The decree does not show that the master's report was adopted. He was appointed by the court on its own motion over the objection of both sides. The report was treated as advisory only and settles nothing, and his findings against us are entitled to no credit. The theory on which the case was tried below cannot be divined from appellant's abstract and brief, because the facts are not fairly abstracted and the argument avoids the issues altogether. The defendant below claimed these things which were found in his favor:

1.    That a large amount of concrete was placed in the structure for which no credit was given.

2.    That the plans were changed and the base of the dam and wings deepened 3 feet and no credit was given for the extra expense.

3.    That pin-piling was put in the four wings of the dam not provided for in the plans and specifications and costing four times as much as pin-piling in the base, and no credit was allowed for this extra cost. The extra cost of items 2 and 3 for labor was $3,462.16.

4.    That the concrete should have been set in 30 days at a cost of $464, and appellant negligently consumed 88 days in doing this work, entailing an extra cost for which no credit was given, but which was charged against appellee amounting to $2,175.

5. That forms for concrete construction which had been built by Peay were on hand and of proper size and were torn up in order to lengthen them to fit the changed plans at a cost of $695 for additional lumber alone, not counting labor and wasted material for which no credit was given.

6. That the work should have been finished in 30 days, but was negligently and wastefully extended for many months entailing cost of foreman for a long time at $35 per week.

Each of these contentions is supported by the evidence and opposed only by mere assertions or frivolous contention.

The appellant had certain excuses for the extraordinary delay and cost which are mere inventions without foundation or merit. They are as follows:

(a) That the great additional cost was caused by loss of sand, rock and cement, due to the fault of the contractor.

(b) That the great additional cost and delay was caused by reason of inadequate equipment furnished by the contractor.

(c) That the great cost was caused by too much being allowed in the estimates of the district engineer.

The frivolousness of these excuses is shown by the testimony. The general finding of the chancellor in appellee's favor as to appellant's demands is amply supported regardless of the master's report, which we have not discussed because the decree is founded upon all the evidence in the case. Appellee should recover on the cross-appeal, as the facts set out show that not only was the contractor's profit wiped out but a great loss was caused by the unauthorized departure from the plans and uneconomical, extravagant and wasteful conduct of the work by appellant, and that if fair credit was given there would be more than $2,000 due appellees. Nick Peay also intervened and prayed a recovery for $3,000. The court allowed nothing on these cross-demands, and

a cross-appeal has been prayed and judgment thereon is asked, as the evidence warrants recovery thereon.

HUMPHREYS, J. This suit was instituted by appellants against appellees in the second division of the Pulaski Circuit Court on the 18th day of June, 1912, to recover $3,109 on a bond executed by appellees in that sum as sureties for the faithful performace of a contract entered into by and between appellants and the Nick Peay Construction Company, under which contract the said Nick Peay Construction Company undertook to build and furnish all material for the construction of nine vitrified pipe culverts and a concrete floodgate or dam across Pennington Bayou, near Woodson, Arkansas. The material allegations in the complaint were that the Nick Peay Construction Company signed a contract on February 25, 1910, to build the aforesaid culverts and dam or floodgate, furnishing all material and labor under a "unit bid," meaning a fixed price for the several classes of work entering into the construction, which bid was as follows:

"Excavation, 40 cents per cu. yd.

Driving round or pin piling, 50 cents per lin. ft.

Wakefield sheet piling, $45 per 1,000 F. B. M.

Concrete, $12 per cu. yd.

Gates, complete, $2,600.

24" culverts, $2.25 per lin. ft.

18" culverts, $1.75 per lin. ft.

15" culverts, $1.50 per lin. ft.

12" culverts, $1.25 per lin. ft.

Concrete base, 40c. per lin. ft.

Cast-iron gates, $70 each."

That said construction company was to begin work within twenty days after signing the contract and to continue and complete it on or before June 1, 1910; that appellee began the work within the time and continued it in a slow and unsatisfactory manner until after the construction company received pay on the last estimate rendered on its work by the engineer on July 8, 1910, at which time, or soon thereafter, it abandoned the work;

that, at the time of abandonment, said construction company had received a total of $5,564.50 on estimates, which included items of labor and material for construction done and materials on the ground ready to be placed in the construction; that on August 3, pursuant, to notice to appellees and the construction company, and to a letter of authorization signed by appellees, appellant took charge of the work under abandonment provisions in the contract and completed it in accordance with the terms of said abandonment provisions; that, including the amount paid said construction company on estimates, which amounts were paid with the knowledge and consent of appellees, it cost $17,394.36 to complete said contract, being $5,876.44 in excess of the sum which the work would have cost appellants if said construction company had duly performed the contract according to its bid; that it kept an account of all outlays made in the construction of the work, a copy of which account and bill of particulars, showing pay rolls, etc., was attached to the complaint and marked "Exhibit 6."

Appellees filed answer denying all the material allegations in the complaint and counterclaim for credits on account of extra concrete, extra lumber, piling and other materials, extra labor for placing concrete and driving piling not provided for or contemplated by the contract, for which appellants had paid out large sums and not given the construction company credits in the account attached as "Exhibit 6" to the complaint; that, had proper credits been given, it would have been entitled to a judgment of $2,000 over against appellants.

Appellees answered, denying all material allegations in the counterclaim and cross-bill.

It seems that no formal motion or order was made transferring the cause to the chancery court, but, without objection by the parties, the cause was tried in the Pulaski Chancery Court. After the pleadings and depositions in the case had been read and arguments made, the chancellor, on his own motion, appointed W. D. Dickinson special master, over the protest of all the parties, au-

thorizing him to take additional evidence, to read the evidence already taken, hear arguments and make findings on the points: "(1) Whether the construction company had done work at too low a figure; (2) whether there was any pin-piling used in completing the work not contemplated in the original contract, and what was the value of. this additional work; (3) whether there was any unreasonable delay on the part of the district in completing the work; (4) whether there was any delay on the part of the district in completing the work which involved any additional expense; (5) what additional expense was incurred by negligence or delay, if any, of the district in completing the work; and (6) what should it have cost to have finished the contract." Without hearing further evidence or argument of council, the special master filed a report on the several points, or response to the several questions, on the 13th day of February, 1918. Exceptions to the report, attacking every part of it, were filed by appellants on the same day. Nick Peay then intervened and filed a cross-bill alleging that, according to the master's report, appellant was indebted to him in the sum of $3,000. Appellant filed motion to dismiss the intervention and answer denying the allegations set up in the cross-bill. On June 13, 1918, the court rendered the following decree: "Now on this day come the complainants by Messrs. Morris M. and Louis M. Cohn, their solicitors, and come the defendants, by Messrs. Cockrill & Armistead, their solicitors, and this cause having. been submitted to the court upon the pleadings and upon the depositions of Gordon E. Greefield, P. B. Hill, W. G. Stahl and Mike Kelly, and the exhibits to the said depositions, in behalf of the complainants, and upon the depositions of Nick Peay, Julius Mons, P. B. Hill, recalled, D. A. McCrea, Henry Hamilton and Gordon N. Peay, and the exhibits thereto, in behalf of the defendants, and the depositions of P. B. Hill and Gordon E. Greenfield and the exhibits thereto, in behalf of the complainants on rebuttal, and upon the report of W. D. Dickinson, special master, and the exceptions and amended exceptions filed

in behalf of the complainants, and the court having heard arguments of counsel, and being well and sufficiently advised in the premises, and being of the opinion that said exceptions should be overruled, doth find that the complainants are not entitled to recover anything from the defendants herein.

"It is therefore ordered, adjudged and decreed that the said exceptions be and the same are hereby overruled, and that the complaint of the plaintiffs herein be, and the same is hereby dismissed for want of equity."

From the findings and decree of the court, an appeal has been prosecuted to this court.

The record in this case is voluminous, but, after a careful reading and consideration of the evidence, our conclusions from it obviate the necessity of making a detailed and lengthy statement of the facts. A very general statement of the facts is sufficient upon which to base and announce our conclusions.

On February 25, 1910, the Nick Peay Construction Company signed a contract to construct for appellants nine vitrified pipe culverts and a concrete flood gate or dam across Pennington Bayou, near Woodson, Arkansas, for a total price, according to the testimony of Nick Peay, of about $12,400; and, according to the estimate of appellants' engineers, of $11,501.35, which contract was to be completed on June 1. The construction company began work March 10 and continued it through persuasion and pressure in a desultory manner until the 8th day of July when it ceased work and placed a watchman on the works, who remained until July 28. At the time the construction company abandoned the work, it had almost completed the culverts; had built a cofferdam around the place where the floodgate, dam and wings were to be constructed; had dug a ditch so as to carry the water out of the bayou around the cofferdam; had about completed the excavations for the dam and wings; and had assembled practically enough material on the ground to complete the contract work in accordance with the original plans, except the floodgates which had been ordered from

Chickasaw Iron Works.  Prior to abandonment, appellants had paid the construction company the sum of $5,-584.54 on estimates, including material assembled on the ground but not placed in the construction.  The construction company and appellees were notified on June 14, by appellants, that they would take over the work on account of delay by the contractors and complete the work at the expense of the construction company and its bondsmen, the appellees, under the authority contained in the contract, unless the sureties themselves would immediately take up the work and push it to completion without further delay.  In response to the notice, and after consultation, appellees signed a letter authorizing appellants to complete the work, which follows:

"Little Rock, Arkansas,

"August 3, 1910.

"Gordon E. Greenfield, Samuel L. Kay and Wm. H. Brown, as Board of Directors Woodson Levee District:

"Dear Sirs:   In view of the fact that the Nick Peay Construction Company is without funds to complete the job as per contract with you, and to avoid delay in the completion of said work, we hereby authorize and direct you and your engineer to carry on, or to have carried on, to completion as expeditiously and economically as possible, and if, after payment of all sums required for such purpose, there be any part of the contract price left over, you are directed to pay it to Gordon N. Peay, as trustee; and, if the said contract price be inadequate to complete said work and any additional sums are thereby incurred and expended by you to complete said job economically, in excess of said contract price, we and each of us obligate ourselves to you personally to immediately pay the same to you on presentation of the engineer's statement, showing the particulars of said demand.

"Yours truly,

"(Signed)                          "GORDON N. PEAY,

"E. N. WEIGEL."

Under authority contained in the contract and letter, appellants took charge of the equipment and materials assembled on the ground and proceeded to complete the work, but changed the plans in material parts, which entailed additional labor and materials. The material changes in the contract consisted in a large amount of extra excavation under the base of the dam and the four wings; the driving of a large amount of additional piling under the wings and the materials for placing a large amount of additional concrete under the dam and wings thereof; additional lumber and labor thereon for making larger forms in which to place the concrete, caused by excavating to a greater depth under the dam and wings; and the removal of a large amount of dirt which fell into the original excavation, caused by the withdrawal of supports and undue length of time before placing the concrete. The work was continued and completed as a whole, in accordance with the changed or modified plans, by employing a foreman and laborers, and buying all necessary additional materials to complete the work. In the progress of the work, the laborers were paid each week according to a general pay roll. Vouchers were issued to cover these pay rolls, as well as the purchase of all materials necessary to complete the work, freight thereon, etc. The accounts were not kept so that the labor and material entering into the extras caused by change in the plans, could be segregated from the labor and material that were used in the completion of the contract in accordance with the original plans. The work was completed at a total cost to appellants of $17,377.79, including the amount they advanced to the construction company prior to abandonment of the work. This was $5,876.44 in excess of the total amount of the contract price according to the estimate of the engineers employed by appellants. The main work was completed by appellants in May, 1911, and the cofferdam removed June 2, 1911, after which a statement, bearing date of July 25-26, 1911, containing all items of expenditure for materials, coal, freight, etc., additional equipment and weekly labor pay

rolls, used in the completion of the work, was mailed in letters of date August 3, 1911, to the Nick Peay Construction Company and appellees, demanding payment of $5,-876.44, the cost of completing the work above contract price, and demanding at least the face of the surety bond from appellees. No reply was received to the letters, and suit was ordered by the appellants on December 20, 1911, and instituted on the 18th day of June, 1912.

It is contended by appellants that the Nick Peay Construction Company abandoned the contract without justification or excuse. We have not set out the facts responsive to this issue, because counsel for appellees concede that there was not sufficient excuse or justification in the law for abandonment of the contract by the construction company.

Appellants also contend that appellees are bound under the doctrine of account stated. We have read their complaint carefully and find no such issue tendered by it. The only reference to the account in the complaint is that appellants caused a proper account to be kept; that, after, allowing all credits, there is due appellants $5,876.44, amount expended in completing the work, in excess of the contract price; that said amount was demanded, or so much thereof as was stipulated in the said bond, of appellees, who refused to pay same; that the sum so demanded was $3,109, which still remains due, with interest from date of demand, which was the 26th day of July, 1911. This was nothing more than an allegation of the rendition of an account. In order to make the suit one on account stated, there should have been an averment that the account between the parties had been stated. The doctrine of account stated "rests upon the ground that the cause of action in such cases is founded upon the express or implied promise to pay the amount that has been found to be due upon the accounting." 1 C. J. 722, 723. The proof in this regard was no more definite than the allegations of the complaint. The proof was not calculated to direct the attention of appellees to the fact that appellants relied for recovery upon an ex-

press or implied promise by appellees to pay the balance shown by the account. When Gordon Peay was on the stand as a witness, he was not even asked if he received such an account, or inquired of concerning it. In fact, the evidence on both sides was directed to the correctness of the account. It is only where issues are clearly defined by the evidence that courts will treat the bill or complaint as amended to conform to the evidence, so under the averments of the complaint as well as the evidence, the suit must be treated as one on account and not on account stated.

It is also contended by appellants that the master's report is incorrect in many particulars and that it was based upon conjecture and on a personal inspection of the work. Some of the findings would indicate that the special master obtained information from other sources than the record evidence. We are convinced, not only on this account, that his report has no proper place in the case, and, also, for the further reason, that he was not ordered, and did not attempt, to state an account between the parties. His report consisted in answering questions propounded to him by the court. The fact that the court overruled the exceptions to his report does not indicate that the court's decree was based upon such report. In fact, appellants themselves say that the decree was not rendered in accordance with the report. The decree clearly indicates that the court did not adopt the findings of the master as his findings and decree accordingly. The decree recites that the cause was submitted upon the pleadings, depositions and exhibits thereto attached, as well as the report of the special master. Appellees disavowed any responsibility for the appointment of the master and contend that the findings and decree of the court are sustained by the evidence without the master's report. The fact that the court received the report of the master and entertained and overruled the exceptions thereto cannot be urged as reversible error unless the report constituted an erroneous statement of account between the parties and was the basis of the decree.

This brings us to a consideration of the insistence of appellants that the decree of dismissal is contrary to a clear preponderance of the evidence. According to the account presented and insisted upon by appellants as correct, there is a discrepancy between the contract price and the cost of completing the work in the total sum of $5,876.44. Appellants attempt to account for this discrepancy on account of inadequacy of equipment, loss of sand, stone and cement by appellees, shortage of stone in weight and over-estimates on first allowances made and paid to the construction company. We have examined the evidence relating to these matters and have concluded that the great discrepancy can not be accounted for in this way. The loss of sand, stone and cement was infinitesimal as compared with the large difference between the contract price and the cost of completing the work. Neither do we think the first estimates made and allowed the construction company were excessive. The only hypothesis upon which this large discrepancy between the original contract price and the cost of completing it can be accounted for is that a large amount of extra excavation was made, that a very much greater amount of cement was used, that a large amount of additional labor was used in placing and setting the cement, in driving the extra piling in the four wings of the dam and in removing the dirt that fell in the excavation from the banks when the supports were removed, and in the use of extra lumber for making larger forms than the plans called for, and the labor necessary to make them. The account presented and insisted upon gives no credit to the construction company or appellees for these items of extra expense. Appellees contend that they are entitled to a total credit of $8,072.66 for these items. We think this is a large estimate, but it is impossible from the manner in which the accounts were kept to even approximately ascertain with any degree of certainty what credits should be accorded to appellees for these items. The pay rolls were kept without reference to kind and character of work done by the laborers. It is impossible to tell how

much of their work was done in completing the contract according to plans, and how much was done on the extra work caused by a change and modification of the plans. There is no certain way by which this labor account can be segregated. The burden of keeping the accounts so that the labor items might have been apportioned to each unit of work was clearly upon appellants when they took charge of the work. Not having kept the accounts in such way that the labor can be apportioned to the various units of work, the court properly dismissed their bill.

The facts not being presented in the record upon which to state an account between the parties with any degree of accuracy, nothing can be allowed on the cross-appeals of appellees and Nick Peay.

The decree of the chancellor is therefore affirmed.