ARKANSAS GAME & FISH COMMISSION *v.* KIZER, *et al.*

5-198                                    262 S. W. 2d 265

Opinion delivered November 23, 1953.

*Ed E. Ashbaugh,* for appellant.

*John L. Anderson,* for appellee.

GEORGE ROSE SMITH, J. This is the second appeal in a suit brought by the appellee landowners to compel the White River Drainage District to maintain the surface level of Old Town Lake at an elevation of 159 feet above sea level. By intervention the Game and Fish Commission and the appellant landowners contended that the lake should be maintained at a level of 169 feet to protect the fish in its waters. After hearing the testimony of many witnesses and after considering a report submitted by a board of three civil engineers appointed by the court, the chancellor originally entered a decree fixing the water level at 162 feet.

Upon the first appeal we held that the trial court erred in considering the engineers' report without permitting these appellants to cross-examine the men who had prepared it. The case was accordingly remanded so that an opportunity for cross-examination might be provided. *Ark. State Game & Fish Com'n* v. *Kizer,* 221 Ark. 347, 253 S. W. 2d 215. After remand the three engineers testified at a second hearing, and in the decree now challenged the chancellor again fixed the water level at 162 feet. We confine this opinion to the two points now argued by the appellants.

First, it is contended that if the testimony of the court's board of engineers be disregarded, the only expert opinion in the record shows that the normal elevation of the lake's surface is 164 feet above sea level. We do not so construe the testimony. There is abundant proof that the level of this lake has varied from a low of about 158 feet to a high of about 169 feet. In addition to fluctuations resulting naturally from wet or dry seasons, the lake's depth has also been affected by the drainage district's manipulation of its artificial drainage system. Any attempt to determine the lake's normal level must take all these factors into account.

The appellants' argument is based almost entirely upon the testimony of an engineer, E. G. Green, who said at the first trial: "The average [elevation], I would think, would be about 164 feet; rather, that would be normal." But in other respects Green's testimony strongly supports the chancellor's decree. Green said, for example, that an elevation of 164 feet would be hazardous in the spring, owing to the threat of flood waters at that time of year. Furthermore, Green had been an engineer for the drainage district for some twelve years, and at the first trial he testified: "I try to keep an elevation of 162 feet. Now it is 161.6. . . . That is two or three tenths [of a foot] lower than it should be."

Finally, Green was one of the three engineers appointed by the court, and at the second hearing he qualified his earlier statement in this way: "I didn't hear the question asked: if 164 feet was the normal elevation of the lake. I certainly didn't answer that it was normal. I said 164 feet would keep the water within the banks of the lake. Those banks are several feet high, and you would vary from 158 feet to 166 or 167 feet, but it isn't the normal water." The appellants would have us ignore this and all other testimony taken after remand, for the reason that in some jurisdictions it is held that a trial court must hear the case as presented by the litigants and cannot call a witness upon its own initiative. *South Covington etc. Co.* v. *Stroh,* 23 Ky. Law Rep. 1807, 66 S. W.

177, 57 L. R. A. 875. We do not reach this question, for the objection does not fairly apply to the quoted excerpt from Green's testimony at the second hearing. Green was not a new witness selected by the court alone; he had been called at the first hearing both by the plaintiffs and by these appellants. Since a court may on its own motion recall a witness for clarification of testimony already given, *The Kawailani*, 9th Cir., 128 F. 879, the chancellor was at least entitled to consider such of Green's later statements as were merely explanatory of his earlier testimony. When we review the record in this manner we do not find the decree to be contrary to the preponderance of the evidence.

Second, the Game and Fish Commission complains of the court's action in allowing to its board of engineers fees totaling $1,300, of which $966.67 was taxed as costs against the Commission. This issue was expressly reserved in the first opinion, and we now hold that the chancellor was without authority to assess this item against the Commission.

It is suggested that these court-appointed engineers were in effect masters in chancery, whose fees may therefore be taxed as costs. The board's procedure, however, did not resemble that by which a master must be guided. Ark. Stats. 1947, Title 27, Ch. 18. A master not only reports his findings to the chancellor but also submits a transcript of the evidence taken, so that the court may determine whether the findings are supported by the testimony. For this reason a master in chancery cannot base his conclusions upon evidence not in the record. *Pierce* v. *Scott*, 37 Ark. 308; *Greenfield* v. *Peay*, 137 Ark. 552, 209 S. W. 730. Yet here the board of engineers neither took testimony nor confined themselves to the record. Instead, they studied the available records and gauge readings of the lake, examined the surrounding topography, took soundings of the lake's depth, and, without submitting any of these matters to the court, recommended that the lake level be fixed at 162 feet. There is little similarity between the board's conduct and that of a master.

It is plain enough that the three engineers appointed by the court served merely as expert witnesses; so the question narrows down to whether a court may employ such experts and tax their compensation as costs over the objections of the litigants. The marked scarcity of decisions on the point indicates pretty convincingly that the court lacks this authority. One of the few cases in point, which we approve, is *International Fastener Co.* v. *Francis Mfg. Co.*, 204 App. Div. 526, 198 N. Y. S. 455, affirmed by memorandum opinion, 236 N. Y. 673, 142 N. E. 330. There the defendant consented to the referee's appointment of an expert accountant, but counsel gave notice from the outset, as the Commission did here, that the payment of this expert's fee was not agreed to. It was held that the charge could not be taxed as costs, for the reason that costs "are a creature of the statute and cannot be taxed except by its authority."

Our own cases point to the same conclusion. We have often held that the allowance of costs is purely statutory, since at common law neither party was entitled to recover his costs. *Thorn* v. *Clendenin*, 12 Ark. 60; *Wilson* v. *Fussell*, 60 Ark. 194, 29 S. W. 277; *Boynton Land & Lbr. Co.* v. *Hawkins*, 122 Ark. 374, 183 S. W. 959. California, Rhode Island, and Wisconsin have statutes permitting the court to select an expert witness, and that procedure is contained in the Model Expert Testimony Act, which makes provision for the expert's compensation. 9 U. L. A. 429, and Commissioners' Note to § 1. We have no similar statute, however; somewhat to the contrary, we have held that in a criminal case the State may require any physician to give expert testimony without being entitled to more than an ordinary witness fee. *Flinn* v. *Prairie County*, 60 Ark. 204, 29 S. W. 459, 46 Am. St. Rep. 168, 27 L. R. A. 669; *Clark County* v. *Kerstan*, 60 Ark. 508, 30 S. W. 1046. In the absence of statutory authority, the fees now in question cannot be treated as costs.

That part of the decree which taxes these costs against the Commission is set aside, and as so modified the decree is affirmed.