Eugene HORTON *v.* Billy Joe FERRELL

97-1210                                                          981 S.W.2d 88

Supreme Court of Arkansas
Opinion delivered December 10, 1998

*Thomas D. Deen*, for appellant.

*Brockman, Norton & Taylor,* by: *C. Mac Norton,* for appellee.

RAY THORNTON, Justice. In this appeal dealing with the appropriate role of a special master appointed in a civil case, appellant contends that a special master is a judge subject to the Code of Judicial Conduct, and that when the special master declined to disqualify himself after relying upon *ex parte* communications, the trial court committed reversible error when it did not discharge the master and strike his report. We agree and remand for further proceedings.

The case developed as an accounting action following the dissolution of a partnership for growing tomatoes conducted by the parties in Bradley County from 1988 through 1992. Appellant Eugene Horton is the proprietor of Horton Tomato Company, a tomato-packing house and produce-brokerage firm located in Hermitage. Appellee Billy Joe Ferrell is an area farmer. The unwritten agreement between the two was that appellant would be responsible for financing, packing, and marketing the crops produced, while appellee would be responsible for growing the tomatoes. Except for one year, profits were to be equally divided.

The principal asset of the partnership resulted from a damage award from DuPont Corporation for supplying tainted herbicide for use on tomatoes in 1989 and 1990. The net recovery to the parties in this case was $678,265.47. When the parties determined to dissolve the partnership, this sum was deposited in the registry of the court, and the court appointed a special master, Richard L. Schwartz, to make proposed findings of fact and conclusions of law as to the proper distribution of partnership assets, including the funds on deposit and certain farm equipment. Mr. Schwartz, a certified public accountant, had acted as a master in a previous case, but the record does not reflect that he was familiar with the Code of Judicial Conduct, or that he was informed or instructed in the conducting of hearings or the legal issues relating to the circumstances of this case.

The master solicited documents from the parties and took their testimony, and met individually with each party and his attorney, without the other side present. In addition to the interrogatories exchanged by the parties, the master further submitted

to each side a list of questions to be answered, and used these unsworn answers in the preparation of his report. On September 15, 1995, the master submitted a preliminary draft of his report, which revealed that the master had consulted a number of third parties and other sources to obtain much of the information utilized in his findings on the issue of the partnership's 1991 receipts. For example, the draft report lists among the information relied upon in completing this report several telephone discussions by the master and an associate accountant in his firm with other growers and buyers from both Arkansas and other states, along with agriculture agents from both state and federal agencies, as well as "other information deemed necessary for completion of this engagement." This information was apparently utilized in determining partnership profits for 1991, the records for which were destroyed in a fire at appellant's offices. Finding some discrepancies in the price estimated in the evidence presented by appellant, the master conducted some "research" through telephone calls to other markets and local growers.

Upon learning that *ex parte* communications had been employed by the master, appellant promptly sought to obtain information about these communications, and, after being informed of the extent of the use of *ex parte* information, objected to the draft report at the next hearing on December 5, 1995. Appellant's objection to the report and motion for the master's recusal were denied at the December hearing, and, following that hearing, the master conducted some additional "research" through telephone calls to other markets and local growers.

The master filed his final report with the court on March 26, 1996. On April 15, 1996, appellant filed a motion to discharge the master, objecting to the court's consideration of the master's report because of the *ex parte* communications and the investigative role employed by the master, as well as the report's substantive findings. The master's testimony was taken at the hearing on the motion on May 9, 1996. He stated that he had not filed a record of the proceedings before him, but only those exhibits and documents attached to the final report. The substance of his contacts with outside sources was not reduced to written form for the rec-

ord, and the master testified that there were others he had contacted whose names he could not recall.

At the hearing, the trial court ruled that appellant was precluded from introducing any testimony or other evidence not considered by the master. The trial court overruled appellant's objections to the master's report, and adopted the report in its entirety, finding that the master's findings of fact were not clearly erroneous. The trial court found that appellant's motion to strike the master's report was not timely filed with the court, and that appellant had waived any objections as to the manner in which the master gathered evidence.

From those findings appellant brings this appeal, arguing that the trial court erred in denying appellant's motion to strike the master's report and discharge the master; that the trial court erred in refusing to receive new evidence in reviewing the master's report; and that the trial court erred in adopting the master's proposed findings. We do not agree with the trial court's finding that this objection and request for recusal was not timely filed with the trial court, and next consider the merits of the objection and motion.

■ Although chancery cases are reviewed *de novo* on appeal, we will not disturb a chancery court's findings of fact unless they are clearly erroneous or clearly against the preponderance of the evidence. *McGarrah v. McGarrah*, 325 Ark. 81, 82, 924 S.W.2d 453 (1996).

■ We first address the question of whether a special master is a judge, subject to the provisions of the Code of Judicial Conduct. Rule 53 of the Arkansas Rules of Civil Procedure governs the appointment of masters, giving each court in which an action is pending the authority to appoint a special master therein, subject to the limitations of the rule. Ark. R. Civ. P. 53(a). Reference to a master is limited to those cases tried without a jury, and only upon a showing that some exceptional condition requires it. Ark. R. Civ. P. 53(b). The master has the authority to put witnesses on oath and may examine upon oath, and he shall cause a record to be made of the evidence offered and excluded. Ark. R. Civ. P. 53(c). The master shall file his report with the clerk of

the court and unless otherwise directed shall file with it a transcript of the proceedings and of the evidence and the original exhibits. Rule 53(e) requires that the trial court shall accept the master's findings of fact unless they are clearly erroneous. A master's finding is clearly erroneous when, although there is evidence to support it, the court is left with the definite and firm conviction that a mistake has been made by the master. *McGraw Edison Co. v. Central Transformer Corp.*, 196 F. Supp. 664 (D.C. Ark. 1961); *United States v. 620.98 Acres of Land*, 255 F. Supp. 427 (D.D. Ark. 1966). *See generally Henry, Walden & Davis v. Goodman*, 294 Ark. 25, 741 S.W.2d 233 (1987).

■ The Code of Judicial Conduct states that: "Anyone, whether or not a lawyer, who is an officer of a judicial system and who performs judicial functions, including an officer such as a magistrate, court commissioner, special master or referee, is a judge within the meaning of this Code. All judges shall comply with this Code . . ." Ark. Code of Judicial Conduct, Application of the Code of Judicial Conduct § A. The canons and text establish mandatory standards, not mere guidelines. *Farley v. Jester*, 257 Ark. 686, 694, 520 S.W.2d 200, 204 (1975).

■ We hold that a special master is a judge subject to the Code of Judicial Conduct. Canon 3(B)(7) of the Code of Judicial Conduct provides that: "A judge shall not initiate, permit, or consider *ex parte* communication . . ." The Commentary to this Canon reads: "A judge must not independently investigate the facts in a case and must consider only the evidence presented." Ark. Code of Judicial Conduct, Canon 3(B)(7).

Here, the master conducted an independent investigation, and obtained evidence in an *ex parte* communication manner clearly in violation of Canon 3(B)(7). As soon as the master's report was submitted to the trial court, appellant brought his timely objection to the report, pursuant to Rule 53(e)(2) of the Arkansas Rules of Civil Procedure, and his motion to require recusal to the attention of the trial court. We are not provided with any authority suggesting that appellant had a right to an interlocutory appeal from the master's denial of his objection to the report and request for the master's recusal.

■ We have previously addressed the use of *ex parte* communications by a master in the case of *Pierce v. Hyde*, 37 Ark. 308 (1881), which concerned the appointment of a master in chancery to divide the proceeds of a newspaper partnership. We held that the master acted without evidence, but was governed instead by his own experience in newspaper management, noting that a master should not act upon his knowledge, or upon his best judgment, derived from conversation with others. In deciding upon facts, a master's position is analogous to that of a jury, and the evidence upon which he reaches conclusions should be properly taken on oath, and returned with the report, to be examined by the court. Values of work and of material should be proved as other facts, and not collected by the master from his own experience, or from the price lists of the times, or from consultations with others. This would be dangerous, in the first instance, and preclude a party injured from the proper mode of correction. *Id.* at 314.

■ We next addressed this issue in 1953 in *Arkansas Game and Fish Commission v. Kizer*, 222 Ark. 673, 262 S.W.2d 265 (1953), which dealt with the distinction between special masters and expert witnesses. We held that a master not only reports his findings to the chancellor but also submits a transcript of the evidence taken, so that the court may determine whether the findings are supported by the testimony. For this reason a master in chancery cannot base his conclusions upon evidence not in the record. *Id.* at 676, 266.

■ ■ The trial court is charged with the burden of instructing masters it appoints as to their duties and responsibilities when it selects non-lawyer masters, and it was reversible error for the trial court to have accepted the master's report in this matter. Because of the master's reliance upon *ex parte* communications, he must be relieved of responsibility for further conduct of this assignment. We therefore reverse the trial court's denial of appellant's motion to discharge the master and strike his report. Because appellant's other points on appeal relate to the master's report and the trial court's reliance thereon, we do not address these points in this appeal. We remand for further proceedings consistent with this opinion.

Reversed and remanded.