2012 Ark. 264

**Partne A. DAUGHERTY, Appellant**

v.

**JACKSONVILLE POLICE DEPART-
MENT; Gary Sipes, as Jacksonville
Police Chief; and Gary Fletcher, May-
or of Jacksonville, Appellees.**

No. 11–344.

Supreme Court of Arkansas.

June 14, 2012.

Rehearing Denied Aug. 14, 2012.

Partne A. Daugherty, Pro se, Jacksonville, for Appellant.

Robert E. Bamburg, Jacksonville, for Appellees.

DONALD L. CORBIN, Justice.

Appellant Partne A. Daugherty appeals an order of the Pulaski County Circuit Court finding that Appellees Jacksonville Police Department, its Chief of Police Gary Sipes, and Gary Fletcher, Mayor of Jacksonville (collectively referred to as the "Department"), did not violate the provisions of the Freedom of Information Act (FOIA), codified at Ark.Code Ann. §§ 25–19–101 to –110 (Repl.2002 & Supp.2011). On appeal, Daugherty asserts that the circuit court erred in finding that (1) the Department did not violate the FOIA by refusing her first FOIA request on the basis that it was "too broad or burdensome"; (2) the Department's response to her second FOIA request imposing a charge of $2,475.90 for copying the requested records was permissible pursuant to Ark.Code Ann. § 25–19–105; (3) the Department timely and reasonably complied with her third FOIA request; (4) there was no misconduct as a result of the Department's destruction of public records. We affirm in part and reverse and remand in part.

The instant FOIA action stems from requests made by Daugherty after she was stopped for speeding by Jacksonville Police Officer Paul Huddleston on June 24, 2010. On August 13, 2010, Daugherty submitted the first of three requests to the Jacksonville Police Department pursuant to the FOIA.[1] In it, she requested, inter alia:

> 3. A complete copy of any and all audio and video images/recordings of, including but not limited to, any and all patrol vehicle video and separate body recordings with all audio made by Officer Josh Wheeler from July 24, 2010, through August 13, 2010.[2]

----

1. Daugherty filed a previous FOIA request for the audio and video recordings on August 4, 2010. Thereafter, she filed a complaint in circuit court alleging a violation of the FOIA. The circuit court rejected her claim, and the Arkansas Court of Appeals affirmed in *Daugh-* *erty v. Sipes,* 2012 Ark. App. 233, 2012 WL 1111405.

2. The July 24 date was incorrect, as Daugherty intended to request records dating back to the day of her traffic stop, which was June 24.

4. A complete copy of any and all audio and video images/recordings of, including but not limited to, any and all patrol vehicle video and separate body recordings with all audio made by Officer Huddleston from July 24, 2010, through August 13, 2010.

In response, Jacksonville City Attorney Robert Bamburg sent Daugherty a letter, dated August 16, 2010, stating that part of the information in the FOIA request would be provided. But with regard to the requested audio and video recordings of Officers Wheeler and Huddleston, the Department refused to provide them, noting that

your requests are too broad and burdensome. Between the two, there were over Four Hundred (400) separate recordings/incidents, and duplication of such will take too much time and is too broad of a request in nature.

Four days later on August 20, 2010, Daugherty sent a second FOIA request, again asking for all audio and video recordings from Officers Wheeler and Huddleston from June 24, 2010, through August 20, 2010. The city attorney responded, again refusing to turn over the requested audio and video recordings on the basis that Daugherty's requests were "too broad and burdensome." The letter also stated as follows:

After extensive research, there are over One Thousand (1,000) separate recordings and incidents. Duplication of such will take an estimated Ninety (90) hours to prepare, and the FOI Act allows for the City to assess charges for such and require payment prior to compiling said information. To do so would be payable at a rate of Twenty-seven and 51/100 Dollars ($27.51) per hour to compile and produce....

If you wish for such an extreme request to be prepared, please forward a deposit to the City Clerk's Office for the esti-

mated costs to do so—Two Thousand Four Hundred Seventy-five and 90/100 Dollars ($2,475.90).

Daugherty filed a third FOIA request on September 2, 2010. Therein, she requested all audio and video recordings for Officer Huddleston on June 24, 2010, for Officer Wheeler on June 24–25, 2010, and all audio recordings recorded via the shoulder and body mics of Officer Wheeler for June 25, 2010, from 10:00 a.m. until 5:00 p.m. By letter dated September 7, 2010, the city attorney responded that Daugherty had already been provided the audio and video recordings from Officers Wheeler and Huddleston on June 24, 2010, and that all other audio and video recordings from that time frame had been purged from the Department's system.

Thereafter, on September 9, 2010, Daugherty filed a complaint in circuit court, alleging that the Department's refusal to provide the requested records violated the FOIA. She further asserted that the Department's requirement that she pay $2,475.90 for copying of the records is not permitted under the FOIA. Finally, she alleged that the Department knowingly and purposefully engaged in spoliation of evidence, in an attempt to circumvent the FOIA, by destroying public records.

A hearing was held on Daugherty's complaint on September 16, 2010. Daugherty testified that she was prompted to file the FOIA requests after receiving a speeding ticket when she believed she was not speeding. She stated that after realizing she had requested recordings from a period beginning July 24, 2010, instead of June 24, 2010, she filed a new FOIA request with the correct date. According to Daugherty, she wrote on the request that she would pick up the records and even provide a flash drive if needed. Daugherty admitted that she received a copy of the traffic citation issued to her on June 24,

2010, but explained that the copy did not satisfy her FOIA request, as her request was for all audio and video recordings of traffic stops made by Officer Huddleston on June 24, 2010, and all stops by Officer Wheeler on June 24–25, 2010.

After Daugherty testified, the Department moved for a directed verdict, asserting that Daugherty had received her copy of the requested video and that the continued litigation over the issue was frivolous. The circuit court denied the motion for directed verdict. Thereafter, Captain Ken Boyd of the Jacksonville Police Department testified and explained that the Department has an audio- and video-recording system used and activated by patrol officers. The recorders in the patrol units are wirelessly downloaded, and the files are transferred to a server stored in Captain Boyd's office. According to Captain Boyd, access to the server is limited and password protected. He also stated that the recordings are maintained for a forty-five-day period and then purged from the system. The purpose of the forty-five-day limitation is to ensure adequate storage space on the server, according to Captain Boyd. Captain Boyd also testified that Daugherty's FOIA requests entailed over 1,000 files that required converting the files before burning them to a disc. He further stated that this process takes an average of five minutes per video, meaning it would have taken approximately ninety hours to download all of those to disc. According to Captain Boyd, he did not have the technology to remove any given day's recordings to a disc, flash drive, or any other media. He stated that when he pulls up a particular video to burn it to a disc, it goes through a conversion process because if he simply tried to copy the files to give to someone, the files would be unreadable.

Following arguments to the bench, the circuit court announced it was dismissing Daugherty's complaint after finding there was no violation of the FOIA by the Department. A written order was entered of record on September 29, 2010. Therein, the circuit court found that Daugherty's August 13 request received a timely and compliant response. Moreover, the circuit court found that the Department's requirement that Daugherty pay $2,475.90 to obtain the records requested in her August 20 FOIA request was reasonable. Finally, the court found that the Department's inability to comply with the September 2 request because of the automatic forty-five-day purging of records was not unreasonable and did not constitute arbitrary and capricious behavior. From that order comes the instant appeal.

The appropriate standard of review on appeal from a bench trial is not whether there is substantial evidence to support the findings of the circuit court, but whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence. *City of Rockport v. City of Malvern*, 2010 Ark. 449, 374 S.W.3d 660. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been committed. *Id.*

For her first point on appeal, Daugherty argues that the circuit court clearly erred in finding that she received a timely and compliant response to her August 13 FOIA request from the Department. Specifically, she argues that the Department clearly violated the mandatory disclosure requirements of the FOIA when it refused to provide the requested video and audio recordings on the basis that her request was "too broad and burdensome." In response, the Department asserts that

the circuit court did not clearly err where the evidence demonstrated that it made a good-faith attempt to determine which records Daugherty desired and to then provide them. Moreover, the Department states that it searched the Department's records and timely informed and provided to Daugherty "certain records requested, certain requirements for Appellant to obtain other records, and the unavailability of specific records as requested."

In finding that there was no FOIA violation by the Department with regard to Appellant's August 13 request, the circuit court concluded that she received a timely and compliant response from the Department through an August 16, 2010 letter from City Attorney Bamburg, which explained that the request "covered over Four Hundred (400) separate recordings, was too broad in nature, and would need to be narrowed in order for the City to further respond." This finding is clearly erroneous.

This court has held that for a record to be subject to the FOIA and available to the public, it must be (1) possessed by an entity covered by the Act, (2) fall within the Act's definition of a public record, and (3) not be exempted by the Act or other statutes. See Nabholz Constr. Corp. v. Contractors for Pub. Prot. Ass'n, 371 Ark. 411, 266 S.W.3d 689 (2007). Here, there is no dispute as to whether the requested records are public records subject to disclosure under the FOIA; nor is there any dispute over the fact that the records do not fit within any recognized exception. The question for this court, then, is whether the Department's August 16 letter, stating that the request was "too broad or burdensome," was compliant with the dictates of the FOIA, as determined by the circuit court. A review of the FOIA, as well as case law interpreting it, reveals

that the response was not compliant with the requirements of the FOIA.

A review of section 25–19–105(a)(2)(C) reveals that a citizen making a request under the FOIA must provide a request that is "sufficiently specific to enable the custodian to locate the records with reasonable effort." There is no allegation that Daugherty's request was not specific enough; rather, the Department refused to comply with the request on the basis that it deemed it too broad and too burdensome. Nothing in the FOIA allows a public agency to decline to reply to a request on this basis. While the Department could have requested that Daugherty make her request more specific, that was not the problem with her request. The Department's response, refusing to comply with the request, is in direct conflict with the Act and with this court's case law interpreting the Act. We have explained that we liberally interpret the FOIA to accomplish its broad and laudable purpose that public business be performed in an open and public manner. See Nabholz, 371 Ark. 411, 266 S.W.3d 689; Fox v. Perroni, 358 Ark. 251, 188 S.W.3d 881 (2004). Furthermore, we broadly construe the FOIA in favor of disclosure. See id. Section 25–19–105(a)(1)(A) provides that "[e]xcept as otherwise specifically provided by this section or by laws specifically enacted to provide otherwise, all public records shall be open to inspection and copying by any citizen of the State of Arkansas during the regular business hours of the custodian of the records." Ark.Code Ann. § 25–19–105(a)(1)(A) (Supp.2009). Subsection (a)(2)(A) provides that "[a] citizen may make a request to the custodian to inspect, copy, or receive copies of public records." Ark.Code Ann. § 25–19–105(a)(2)(A) (Supp.2009). Pursuant to subsection (d)(2)(A) of the statute, "the custodian shall furnish copies of public records if the

custodian has the necessary duplicating equipment," upon request and payment of a fee as provided in subsection (d)(3). Ark.Code Ann. § 25–19–105(d)(2)(A) (Supp.2009).

Simply stated, the Department's August 16 letter in response to Daugherty's first FOIA request, stating that it would not provide the requested records because her request was too broad and burdensome was not a timely and compliant response. The FOIA does not give the custodian of records the power to pick and choose which requests it may comply with. Nor does the custodian get to choose to release only records it deems relevant, such as the video of Daugherty's stop in this case. We disagree with the Department's assertion in its brief that it cannot be said that it denied Daugherty her rights under FOIA where its "repeated efforts to provide Appellant with information *reasonably deemed relevant* in response to her requests." (Emphasis added.) There is simply no relevancy requirement in the FOIA. Accordingly, it was error for the circuit court to find that the Department complied with Daugherty's August 13 FOIA request.

Next, Daugherty argues that the circuit court erred in finding that the Department's requirement that she pay a deposit of $2,475.90[3] to obtain the records did not violate the FOIA. Daugherty asserts that the legislature specifically clarified and limited a custodian's ability to charge unreasonable copying and duplication fees in an attempt to deter citizens from "reasonable access" to public records. The Department asserts to the contrary that the circuit court's finding—that its requirement of a deposit was in compliance with section 25–19–109—was reasonable and should be affirmed.

In finding that the Department did not violate the FOIA by requiring Daugherty to post a deposit comparable to the amount it was going to cost to produce the records, the circuit court noted that after being informed that her request was too broad and burdensome, Daugherty filed a subsequent request, dating back to June 24, thereby increasing the request. It further cited to the Department's response, that the new request encompassed more than 1,000 separate recordings and would have required approximately ninety hours to prepare. As a result, the circuit court then concluded that

> Defendants' requirement of a deposit in compliance with the terms of ACA § 25–19–109, is reasonable, and consistent with the testimony of Jacksonville Police Captain Kenny Boyd. The Court further finds that Plaintiff, by her own admissions and through Exhibit D3, timely received said letter from Bamburg but never posted said deposit with the City Clerk.
>
> . . . .
>
> Given Plaintiff's failure to submit payment of the deposit in a timely fashion, the Court finds no evidence to indicate the Department's policy or actions were arbitrary, capricious, or in violation of the Act.

The question for this court on appeal is whether the circuit court correctly interpreted section 25–19–109 to authorize the imposition of the fee required by the Department in response to Daugherty's FOIA request.

At the outset, we note that we review issues of statutory interpretation de

---

3. The Department arrived at this sum by estimating the number of hours it would take to copy the requested records and multiplying this by $27.51 per hour, the hourly wage of Captain Boyd, who is one of the persons responsible for copying such records.

novo, because it is for this court to determine the meaning of a statute. *See Bedell v. Williams,* 2012 Ark. 75, 386 S.W.3d 493. Section 25–19–109 provides that

(a)(1) At his or her discretion, a custodian may agree to summarize, compile, or tailor electronic data in a particular manner or medium and may agree to provide the data in an electronic format to which it is not readily convertible.

(2) Where the cost and time involved in complying with the requests are relatively minimal, custodians should agree to provide the data as requested.

(b)(1) If the custodian agrees to a request, the custodian may charge the actual, verifiable costs of personnel time exceeding two (2) hours associated with the tasks, in addition to copying costs authorized by § 25–19–105(d)(3).

(2) The charge for personnel time shall not exceed the salary of the lowest paid employee or contractor who, in the discretion of the custodian, has the necessary skill and training to respond to the request.

(c) The custodian shall provide an itemized breakdown of charges under subsection (b) of this section.

Ark.Code Ann. § 25–19–109 (Repl.2002). This court has not previously addressed this section of the FOIA, which deals with special requests for electronic information. In looking at the plain language of the statute, however, it is apparent that this section does not apply to the situation at hand. Subsection (a) provides that a custodian may agree to "tailor electronic data in a particular manner or medium" and may provide the data "in an electronic format to which it is not readily convertible." Here, the testimony of Captain Boyd clearly demonstrated that the requested audio and video recordings were routinely converted before being saved to a disc. Although Captain Boyd stated that the conversion process takes approximately five minutes per video to complete before it is saved to a disc, this does not mean that the data is not readily convertible. Moreover, Captain Boyd's testimony that he did not have the knowledge to transfer the records via USB to an external hard drive does not equate to a finding that section 25–19–109 applies to make the imposition of a charge acceptable in this circumstance.

Moreover, we agree with Daugherty that this section governs instances when a custodian discretionarily agrees to provide public records in a certain electronic format, either by summarizing, compiling, or tailoring data not readily convertible. This is in line with section 25–19–105(d)(2)(C), which states that a custodian is not required to compile information or create a record in response to a FOIA request. Thus, if a custodian discretionarily complies with such a request, section 25–19–109 is applicable and allows the custodian to require a deposit. Here, Daugherty did not request a summary, compilation, or tailored data not readily convertible; rather, she asked for copies of certain audio and video records. At the hearing, Daugherty testified that she has multiple software programs available that will open formats other than those typically opened through Windows. Daugherty stated that she requested only copies of the recordings and did not ask for any type of special conversion or any type of compilation.

The applicable provision to her request is section 25–19–105(d), which provides in relevant part as follows:

(2)(A) Upon request and payment of a fee as provided in subdivision (d)(3) of this section, the custodian shall furnish copies of public records if the custodian has the necessary duplicating equipment.

(B) A citizen may request a copy of a public record in any medium in which the record is readily available or in any format to which it is readily convertible with the custodian's existing software.

(C) A custodian is not required to compile information or create a record in response to a request made under this section.

(3)(A)(i) Except as provided in § 25–19–109 or by law, any fee for copies shall not exceed the actual costs of reproduction, including the costs of the medium of reproduction, supplies, equipment, and maintenance, but not including existing agency personnel time associated with searching for, retrieving, reviewing, or copying the records.

Ark.Code Ann. § 25–19–105(d)(2)(A)–(d)(3)(A)(i) (Supp.2011). Thus, under this provision, where Daugherty simply requested a copy of the files, the Department could not charge fees that exceeded the cost of reproduction and certainly could not include the hourly rate of Captain Boyd in assessing costs to Daugherty. The circuit court erred in its interpretation and application of section 25–19–109 and thereby erred in concluding that the Department's requirement of a fee in the amount of $2,475.90 was reasonable and not a violation of the FOIA.

We turn now to Daugherty's remaining two points on appeal. First, she argues that it was error for the circuit court to conclude that the Department timely and reasonably complied with her September 2 FOIA request, wherein she narrowed her previous requests to copies of audio and video recordings of Officer Huddleston on June 24 and Officer Wheeler on June 24–25. Second, she asserts that the circuit court erred in finding no misconduct in the Department's destruction of public records. The Department counters that the circuit court's rulings were not erroneous as it did timely respond to Daugherty's requests and that the purging of records did not violate the FOIA.

■ Following receipt of Daugherty's third FOIA request, the Department responded by letter dated September 7, 2010. Therein, the Department stated that Daugherty had previously received the audio and video recordings of Officers Wheeler and Huddleston on June 24, 2010. The response also stated that the Department was providing certain requested audio recordings from June 24, as well as copies of certain traffic citations that had been issued. With regard to the remaining requests for audio and video recordings, the Department stated that those records had been purged from the system and were no longer available.

In addressing the September 2 FOIA request and the purging of records, the circuit court stated that

Defendants timely and reasonably complied with Plaintiff's latest FOI request through a September 7, 2010, letter from City Attorney Bamburg. Said letter noted that recordings from said dates had been purged from the Jacksonville Police Department's system, and the Court notes that the standard purging date for such records would have been August 8, 2010, from information provided by the parties and Capt. Boyd's testimony. Further, the Court notes that automatic purging of the system after a Forty–Five (45) day period is not an unreasonable period of recording preservation and does not constitute arbitrary or capricious behavior, recognizing doing so is Department policy with application to any such recordings contained in the Department's system not specifically preserved otherwise.

Thus, the circuit court's determination that the Department timely and reasonably replied to the September 2 FOIA request

necessarily hinges on its finding that the Department's purging of the records after forty-five days was not unreasonable.

In arguing that the circuit court's ruling was erroneous, Daugherty points to the fact that the Department purged these records after it received her FOIA request of August 4, and without providing the requested records. She avers that the August 4 FOIA request was adequate notice to the Department to preserve the records for a legal challenge. Daugherty admits that the FOIA is silent as to a specific retention-requirement period, but that in this case the Department's conduct violated Ark.Code Ann. § 14–2–204, which in turn implicates a violation of the FOIA.

First, Daugherty's reliance on Ark. Code Ann. § 14–2–204(a)(1)(A) (Supp. 2011), which requires a seven-year-maintenance period for certain municipal police records, as evidence of a FOIA violation is not properly before us. We will not consider this argument, as Appellant is raising this argument for the first time on appeal. It is axiomatic that we will not address an argument not raised below. *May Constr. Co., Inc. v. Town Creek Constr. & Dev., LLC,* 2011 Ark. 281, 383 S.W.3d 389. This is so because we must determine the issues upon the record that was made in the circuit court, and issues not raised below cannot serve as the basis for a decision in this court. *See Yanmar Co., Ltd. v. Slater,* 2012 Ark. 36, 386 S.W.3d 439; *Palmer v. Cline,* 254 Ark. 393, 494 S.W.2d 112 (1973).

The only issue that was properly raised and ruled on with regard to the retention policy is whether the Department's actions of purging the records violated the FOIA. Turning to the FOIA itself, we agree with Appellant that there is no specific retention period for public records set forth in the Act.[4] The Attorney General has issued several opinions on the retention of records within the context of FOIA. The Attorney General has specifically recognized that the FOIA does not require that the document be retained because the FOIA is not a records-retention statute. Op. Ark. Att'y Gen. 2000–220 (2000). However, in answering the question of whether destruction of certain police department documents, in the absence of any stored reproduction of the records, would constitute a violation of the FOIA, the Attorney General opined as follows:

> It is my opinion that the destruction of any police department documents in the absence of a stored reproduction would violate the FOIA *only* if the documents were destroyed *after* a request for access to the documents had been presented to the Department. However, such destruction, even in the absence of a FOIA request, could violate a separate criminal law.
>
> The FOIA does not contain any records retention requirements. That is, the FOIA does not state how long public records must be retained. However, the destruction of public records that have been requested under the FOIA could constitute a violation of the Act, which carries a criminal penalty. (Such violation, if done negligently, constitutes a misdemeanor. A.C.A. § 25–19–104.) Moreover, a citizen who has been aggrieved by such destruction may be entitled to civil relief. A.C.A. § 25–19–107. Finally, it is important to note that destroying a public record (even one that has not been requested under the FOIA), if done with the requisite intent,

---

4. Although there is no specific retention requirement in the FOIA applicable to this case, it should be noted that the Director of the Department of Information Systems shall establish standards and policies governing the retention of electronic records of state agencies. *See* Ark.Code Ann. § 25–18–702 (Supp. 2011).

constitutes "tampering with a public record," within the meaning of A.C.A. § 5–54–121, and is a felony.

Op. Ark. Att'y Gen. 2001–340 (2001) (footnote omitted).

We are precluded from addressing the question of whether a violation of a statute, such as section 14–2–204, necessarily implicates a violation of the FOIA. We are limited to the issue raised below, specifically that the Department's action was a violation of Ark.Code Ann. § 25–19–104 (Supp.2011). That section provides that "[a]ny person who negligently violates any of the provisions of this chapter shall be guilty of a Class C misdemeanor."

Thus, regardless of how improvident the Department's retention policy may be, the question is whether Daugherty proved that the Department negligently violated the FOIA. The circuit court rejected this argument, and we cannot say this was error based on the record before us. Captain Boyd testified at the hearing that it was Department policy to purge the system that maintained the audio and video recordings every forty-five days. He explained that this policy was based on the need to maintain sufficient memory on the server. There was no evidence presented by Daugherty to refute this testimony. Accordingly, we cannot say the circuit court erred in finding that the Department timely complied with Daugherty's third FOIA request or that the Department did not violate section 25–19–104 in purging the records pursuant to its forty-five-day policy.

Affirmed in part; reversed and remanded in part.