

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-14-165

| | |
|---|---|
| | **Opinion Delivered** October 8, 2014 |
| DR. MAHMOOD AHMAD<br>APPELLANT | APPEAL FROM THE<br>INDEPENDENCE COUNTY<br>CIRCUIT COURT<br>[NO. CV-2008-333-2] |
| V. | |
| | HONORABLE ADAM HARKEY,<br>JUDGE |
| HORIZON PAIN, INC.<br>APPELLEE | AFFIRMED |

**ROBERT J. GLADWIN, Chief Judge**

Appellant, Dr. Mahmood Ahmad (Ahmad), appeals from a July 26, 2012 order entered by the Independence County Circuit Court. Ahmad argues that the circuit court erred in denying his requests to remove the special master and to set aside the special master's report for failure to comply with Arkansas Rule of Civil Procedure 53. He also argues that appellee, Horizon Pain, Inc. (Horizon), and original plaintiff, Dr. Meraj Siddiqui (Siddiqui), had no standing and failed to state a factual and legal basis for the derivative action.[1]

Horizon was formed in April 2006 for the purpose of providing medical services to White River Medical Center (WRMC) and other hospitals or medical centers. Its 360 shares were held in equal portions by Siddiqui and Ahmad. Siddiqui was employed by Horizon

---

[1]We dismissed the original appeal in this case, CA 12-991, without prejudice, *see Ahmad v. Siddiqui*, 2013 Ark. App. 562, after which the circuit court entered a final order disposing of Siddiqui's personal claim.

and was paid a salary and income generated by him less expenses. In 2006, Ahmad borrowed $178,519.19 from Horizon and Siddiqui.[2] Siddiqui subsequently left the employ of Horizon, established his own relationship with WRMC, asked that Horizon be dissolved, and sued Ahmad for the monies he still owed to Siddiqui and Horizon.

On December 15, 2008, Ahmad filed a motion to dismiss identifying certain deficiencies in the complaint, based upon Arkansas Rule of Civil Procedure 23.1. On December 23, 2008, Siddiqui and Horizon filed an amended complaint rectifying those deficiencies and giving Ahmad credit for $58,817.06 that he had previously repaid, leaving a balance of $132,090.41. Also on December 23, 2008, Siddiqui and Horizon filed a response and brief in support to Ahmad's motion to dismiss.

On January 12, 2009, Ahmad filed an answer and counterclaim, in which he asserted his right to set-off amounts and sought damages against Siddiqui for tortious interference with his business expectancy and breach of fiduciary duty. On March 29, 2011, Siddiqui and Horizon filed a motion for summary judgment regarding Ahmad's counterclaims. On May 17, 2011, Siddiqui and Horizon filed a motion in limine to exclude certain evidence that Ahmad had belatedly produced related to his claim for setoffs.[3]

---

[2]Horizon's claim was based entirely upon an email and spreadsheet sent by Ahmad to Siddiqui on January 3, 2007, in which Ahmad acknowledged that he owed Horizon $178,519.19, as of that date.

[3]Ahmad claimed various setoffs, including monies owed by Horizon for hosting services by United Pain Care, Inc., a corporation wholly owned by Ahmad, which contracted to provide certain services to Horizon. Ahmad also claimed setoffs for payments for accounting services and other expenses that he argued should mitigate any amounts owed by him to Horizon or Siddiqui.

2

At an in camera hearing prior to the jury trial set for May 24, 2011, the circuit court granted Siddiqui's and Horizon's motion for summary judgment, thereby dismissing Ahmad's counterclaim, and granted their motion in limine to exclude Ahmad from presenting certain evidence regarding alleged setoffs. An order was presented to the circuit judge but was never entered because the parties reached a settlement and read the terms thereof into the record. The judgment was in favor of Horizon but conditioned upon a subsequent hearing to determine any applicable setoffs. Siddiqui dismissed his personal claims with prejudice, leaving only the dispute regarding what Ahmad owed Horizon. The second proceeding was to be held by a special master to consider all claims and setoffs. The judgment contained a prohibition against any execution until after the second proceeding. Over objection by Ahmad, the circuit court appointed Siddiqui's nominee, John C. Gregg, as special master.

At the beginning of the second hearing, an objection was again raised on the basis of Gregg's potential conflict of interest. Testimony indicated that Gregg (1) had been consulted by Siddiqui *on this very issue*,[4] and (2) was the person who drafted the bylaws and advised Siddiqui at the incorporation of Horizon. Ahmad requested recusal by the special master, but that request was denied. After the hearing, the special master denied all of Ahmad's claims of setoff. The circuit court adopted the special master's ruling and ordered that, after

---

[4]Horizon claims that there is no support for this statement in the record. According to Siddiqui's testimony, "Mr. Gregg was consulted by me. He did not incorporate but he did the bylaws and gave me some advice about how partners work and how to buy shares, how much you pay, what laws, what the role of the president, all kinds of corporate basic information." No evidence before us indicates that Gregg provided advice to Siddiqui regarding the matter in controversy before him or related issues.

3



collection of the consent judgment against Ahmad, Horizon be dissolved. It is from this order that Ahmad appeals.

### I. *Denial of Ahmad's Requests to Remove the Special Master*

Although the review of this case is de novo regarding legal issues on appeal, the circuit court's findings of fact will not be disturbed unless they are clearly erroneous. *See Horton v. Ferrell*, 335 Ark. 366, 981 S.W.2d 88 (1998); Arkansas Rule of Civil Procedure Rule 53(c) & (e)(1) and (2) (2014). A finding is clearly erroneous when, although there is evidence to support it, the court, on the entire evidence is left with the definite and firm conviction that a mistake has been made by the master. *HRR Ark., Inc. v. River City Contractors., Inc.*, 350 Ark. 420, 87 S.W.3d 232 (2002). When parties stipulate that a master's findings of fact shall be final, only questions of law arising from the report shall thereafter be considered. Ark. R. Civ. P. 53(e)(3).

A special master is a judge subject to the Arkansas Code of Judicial Conduct (ACJC) and the application of that conduct code is mandatory. *Horton*, *supra*. The ACJC states: "A judge, within the meaning of this Code, is anyone who is authorized to perform judicial functions, including an officer such as a, magistrate, special master, referee, or member of the administrative law judiciary." Ark. Code Jud. Conduct, Application, § I(B) (2014). The canons and text of the ACJC establish mandatory standards, not mere guidelines. *Farley v. Jester*, 257 Ark. 686, 520 S.W.2d 200 (1975).

Rule 2.11 of the Arkansas Code of Judicial Conduct provides that a judge shall disqualify himself in any proceeding in which the judge's impartiality might be reasonably

SLIP OPINION

questioned, including when the judge has a personal bias or prejudice concerning a party or a party's lawyer. A trial judge is presumed to be impartial, and a party seeking disqualification bears a substantial burden to prove otherwise. *Smith v. Hudgins*, 2014 Ark. App. 150, 433 S.W.3d 265. A trial judge's decision to recuse is within his or her discretion, and we will not reverse absent a showing of an abuse of discretion. *Id.* An abuse of discretion can be proved by a showing of bias or prejudice on the part of the trial judge. *Id.* Absent some objective demonstration by the appellant of the trial judge's prejudice, it is the communication of bias by the trial judge that will cause us to reverse his refusal to recuse. *Id.* The mere existence of adverse rulings is not enough to demonstrate bias. *Id.*

The circuit court approved the parties' settlement contained in the "Consent Judgment Conditioned Upon Stipulated Settlement" (consent judgment), which gave the parties thirty days to agree on a suitable person to serve as special master in this case. The consent judgment provided that if no agreement was reached, then the circuit court would appoint someone to serve. Ahmad's counsel had advised Siddiqui's counsel that Ahmad objected to Siddiqui's counsel's suggestion for Gregg's appointment as special master. On August 4, 2011, Siddiqui's counsel filed a petition to appoint Gregg despite Ahmad's objections.

On August 12, 2011, Ahmad filed a responsive pleading formally objecting to Siddiqui's request for Gregg's appointment as special master. There was also an August 22, 2011 letter from Ahmad's attorney objecting to Siddiqui's proposed order appointing Siddiqui's nomination for special master.

On August 29, 2011, the circuit court entered the proposed order appointing Gregg as special master over Ahmad's objections and despite the lack of mutual agreement by counsel for both parties that he was suitable to serve as special master. Approximately eight months later, the hearing before Gregg was scheduled for April 17, 2012. At the beginning of the hearing, Gregg acknowledged that Ahmad's counsel advised him that it had been recently discovered that Siddiqui had sworn in his prior answers to interrogatories that Gregg had served as his attorney in matters related to issues in this case, including preparation of corporate documents for Horizon. Siddiqui had explained the private consultations he had with Gregg about Horizon incorporation matters.

Gregg reviewed Siddiqui's answer to the interrogatory listing him as the attorney who provided legal services to Siddiqui but declined to withdraw as special master. He responded that he had no knowledge of Ahmad's prior objection to his appointment, and that he did not remember any such prior representation of Siddiqui and/or Horizon. Gregg reviewed the documents in question, and he stated that he did not recall preparing any of the corporate documents presented for Siddiqui and/or Horizon. Ahmad then orally renewed his objection to Gregg's serving as special master because of his apparent conflict of interest, or appearance of impropriety, and his past representation of Siddiqui and/or Horizon. Gregg then commented on his concern about any conflict resulting in an appeal or complaint, and whether he was suitable to serve because he was not an accountant, but he refused to recuse and proceeded with the hearing.

6

During the hearing, Siddiqui testified that Ahmad and he were each fifty-percent shareholders in Horizon. During Siddiqui's testimony about corporate-accounting records, Siddiqui was asked by appellant's counsel about an August 22, 2006 check that he wrote for $1,850 for "legal fees" paid from Horizon Pain, Inc., which was entered in a Quick Books report corporate sub-account assigned to Siddiqui. He answered that it was paid by him to "the Master" (Gregg). He further testified that he had randomly selected Gregg as an attorney from the telephone book and paid him to draft bylaws for Horizon, which had been previously incorporated by Ahmad. Siddiqui also testified that he met privately with Gregg in his law office for legal advice regarding Horizon and Siddiqui's personal-employment contract with Horizon, which Gregg possibly had drafted as his private attorney.

Gregg did not respond or comment after Siddiqui's admission to the payment for legal services to Gregg. Instead, he simply adjourned the hearing, leaving the record open for two additional witnesses to be produced by deposition over the following sixty days.

The ACJC includes the following relevant provisions:

An independent and honorable judiciary is indispensable in our society. . . . *Canon 1 ACJC*;[5]

and

A judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities. A judge shall respect and comply with the law and act at all times in a manner that promotes public confidence in the integrity and impartiality of the

---

[5]This is an older version of the ACJC—the current version that matches up most closely to this language is found at Rule 1.2 (2014), which states that "A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety."

judiciary. *Canon 2 ACJC; Rule 2.9(A)(1)(a) concerning ex parte communications with the judge; and Rule 2.11.*[6]

and

Disqualification. (1) A judge shall disqualify himself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (a) the judge has personal bias or prejudice concerning a party or party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding; (b) the judge served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge has been a material witness concerning it . . . . " *Canon 3, E(1)(a) & (b); Rule 2.11(A)(1) ACJC, concerning a judge who has personal knowledge of facts in dispute; and Rule 3.10 regarding the judge's practice of law.*[7]

and

A judge should disclose on the record information that a judge believes the parties or their lawyers might consider relevant to the question of disqualification, even if the judge believes there is no real basis for disqualification." *Canon 3 E(1) ACJC; Commentary*[8]

(Emphasis added.)

Ahmad initially objected to Siddiqui's suggestion that Gregg serve as special master because he believed that this special master had a conflict of interest that disqualified him. With his appointment, Gregg's rulings on all fact and law issues became the sole basis for the circuit court's decision in this matter. Ahmad claims that this is an issue because there was no transcript of the proceeding filed in the record for the circuit court to review before

---

[6]This is not listed under current Canon 2, but seems to be covered by the above-referenced language.

[7]This is now covered in Canon 2, Rule 2.11.

[8]This language is now contained in Comment [5] to Canon 2, Rule 2.11 (2014).

SLIP OPINION

entering its order, and the order was, in fact, entered without any review of the proceedings, in large part because no transcript was submitted by Gregg.

Ahmad argues that the refusal by Gregg and the circuit court to implement a recusal upon the confirmation of a conflict of interest during the hearing before Gregg violates the judicial principles previously set forth. Despite those refusals, Ahmad continued to object to Gregg and the circuit court about the influence and perception that these past ex parte, privileged communications would cause regarding the findings of fact, as well as the interpretation and application of the law.

Ahmad explained to the circuit court that the completion of this agreed dissolution and liquidation process would not be delayed by an order removing the special master. But the circuit judge simply denied both Ahmad's request and motion for recusal, and adopted Gregg's findings of fact and conclusions of law without benefit of a transcript of the proceedings. Ahmad maintains that the circuit court's refusal to order Gregg's removal, as well as its adoption of Gregg's findings of fact and law over objection, without reviewing the mandatory transcript of the proceedings, was reversible error.

We disagree and hold that neither of the subsections of the ACJC relied on by Ahmad requires disqualification of Gregg under these facts. The evidence before us indicates that Siddiqui consulted Gregg in August 2006, at which time Gregg prepared bylaws for Horizon and gave Siddiqui advice about general business-entity information. Gregg's recollection of the events was vague; recalling "taking a shot" at drafting an agreement but not believing that

the employment agreement ultimately entered into between Siddiqui and Horizon was drafted by him.

The question of a judge's bias is usually confined to the conscience of the judge, *see Porter v. Ark. Dep't of Health & Human Servs.*, 374 Ark. 177, 286 S.W.3d 686 (2008), and the party seeking recusal must demonstrate bias. *Smith*, *supra*; *see also Turner v. Nw. Ark. Neurosurgery Clinic, P.A.*, 91 Ark. App. 290, 210 S.W.3d 126 (2005). Gregg properly considered the matters addressed in Ahmad's motion to compel recusal and concluded, based upon his conscience, that he was not biased and could impartially decide the matters before him. Ahmad has failed to demonstrate bias, as Gregg's preparation of corporate documents for Horizon, an entity owned equally by Ahmad and Siddiqui, did not cause him to favor one party over the other. The relevant provision of the ACJC requires disqualification when the judge "served as a lawyer *in the matter in controversy* or was associated with a lawyer who participated substantially as a lawyer in the matter during such association." (Emphasis added.)

Horizon cites *Little Rock School District v. Armstrong*, 359 F.3d 957 (8th Cir. 2004), in which the Eighth Circuit Court of Appeals considered whether Judge Bill Wilson should have granted a motion to compel recusal based upon his representation of Judge Henry Woods in 1987, related to a mandamus proceeding arising out of the same desegregation case. In its decision, the Eighth Circuit cited with favor language from a previous case, *In re Apex Oil Co.*, 981 F.2d 302 (8th Cir. 1992), in which it found that a judge's previous representation of parties to the case was not "sufficiently related" so as to constitute the same matter in controversy. *Armstrong*, 359 F.3d at 961. In *Armstrong*, the court went on to find

10

that "there is not a sufficient relationship between the recusal proceedings with respect to Judge Woods and the issues now before us on the merits to make them the same '*matter in controversy*.'" *Id.* (Emphasis added.)

Likewise, we hold that there is not a sufficient relationship between Gregg's drafting bylaws for Horizon and the issues that were before him as special master in these proceedings so as to constitute the same matter in controversy. His specific duties, as stated in the consent judgment, were to "consider all legitimate claims and set-offs of the parties or creditors, and to transfer assets or cash to creditors, claimants, or shareholders of the corporation consistent with his findings by application of Arkansas law, rules of civil procedure, rules of evidence, and existing contracts between the parties."

Horizon's only asset, at the time of the hearing before Gregg, was its judgment against Ahmad in the amount of $119,702.13. Gregg's job as special master was simply to determine how to distribute and allocate those funds among the shareholders of Horizon and any legitimate creditors. Because this function had no relationship to Gregg's role in preparing the original bylaws for Horizon, it does not constitute the same matter in controversy, and therefore, there is no conflict that would mandate his recusal. Additionally, there is no suggestion that Gregg exhibited any bias in the hearing or in his findings, as Ahmad does not challenge any of the substantive findings made by Gregg.

II. *Refusal to Set Aside Report for Noncompliance with Rule 53*

Arkansas Rule of Civil Procedure 53(e)(1) provides the following direction for cases being conducted by an appointed master:

11

Contents and Filing. The master shall prepare a report upon the matters submitted to him by the order of reference, and, if required to make findings of fact and conclusions of law, he shall set them forth in his report. He shall file the report with the clerk of the court and unless directed by the order of reference *shall file with it a transcript of the proceedings and of the evidence and the original exhibits.* The clerk shall forthwith mail to all parties notice of the filing.

(Emphasis added.) Failure to comply with the terms of Rule 53 is reversible error. *See Horton*, *supra* (reversing the refusal to remove a master and strike his report that contained information outside the record through his ex parte communications). *See also Ark. State Game & Fish Comm'n v. Kizer*, 222 Ark. 673, 262 S.W.2d 265 (1953) (holding that a master must report his findings to the circuit court and must also submit a transcript of the evidence taken so that the circuit court may determine whether the findings are supported by the testimony, reasoning that the master cannot base his conclusions upon evidence not in the record).

Ahmad notes that no transcript of the proceedings, exhibits, or evidence was filed with the circuit clerk prior to the entry of a circuit court's final order adopting all the special master's findings of facts, law, and plan for distribution of all corporate assets of Horizon to Siddiqui. Accordingly, he requests that the decisions of the circuit court in this matter be reversed, the special master removed, and the special master's report struck from the record.

We hold that Ahmad waived this argument because he failed to raise it before the circuit court. It is axiomatic that an appellate court will not address an argument that previously has not been raised. *Daugherty v. Jacksonville Police Dep't*, 2012 Ark. 264, 411 S.W.3d 196. This is so because the appellate court must determine the issues upon the

record that was made in the circuit court, and issues not raised below cannot serve as the basis for a decision in this court. *Yanmar Co. v. Slater*, 2012 Ark. 36, 386 S.W.3d 439.

III. *Standing and Factual and Legal Basis for the Derivative Action*

The only remaining party plaintiff in this case is Horizon because the other individual plaintiff, Siddiqui, dismissed his personal action with prejudice before the remaining two parties entered into a settlement formalized in the above-referenced consent judgment. The sole remaining action at the time of the settlement was the derivative action. Ahmad claims that he has consistently maintained that there was no standing for Siddiqui and Horizon to bring that action.

His affirmative defenses in his answer and objections to Gregg's finding of facts and conclusions of law denied Siddiqui's standing and venue. Ahmad submits that the question of standing is always a threshold issue, *see, e.g.*, *Brewer v. Carter*, 365 Ark. 531, 231 S.W.3d 707 (2006), and that without it, a party is not properly before the court to advance a cause of action. *Grand Valley Ridge, LLC v. Metro. Nat'l Bank*, 2012 Ark. 121, 388 S.W.3d 24.

The Arkansas Rules of Civil Procedure provide that a shareholder may bring a derivative action on behalf of a corporation to enforce a right of the corporation when the corporation has failed to do so. Ark. R. Civ. P. 23.1. In the case of *Farm Bureau Insurance Company of Arkansas, Inc. v. Running M Farms, Inc.*, 366 Ark. 480, 237 S.W.3d 32 (2006), our supreme court recognized the "near universal" rule that a corporation and its stockholders are separate and distinct entities, even where a stockholder may own the majority of the stock. *Id.*

13

In *Running M Farms*, *supra*, the majority stockholder attempted to maintain a derivative action for the corporation against a third-party insurance company for crop-damage insurance claims it failed to promptly pay to the corporation. But the court held that in order for a shareholder to bring an individual cause of action against a third party, that shareholder must be injured for a wrong, directly from or independently of, the corporation. *See also Golden Tee, Inc. v. Venture Golf Sch., Inc.*, 333 Ark. 253, 260–61, 969 S.W.2d 625, 629 (1998) (determining "that individual stockholders [have] no standing to sue in their individual capacities for injuries allegedly suffered primarily by the corporation and its shareholders"). *See also First Commercial Bank, N.A. v. Walker*, 333 Ark. 100, 110, 969 S.W.2d 146, 151 (1998), *cert. denied* 525 U.S. 965 (1998) (holding that "[a] corporate officer has no individual right of action against a third party for alleged wrongs inflicted on the corporation, even if the officer is the sole shareholder"). Additionally, this court has held that "direct suits are appropriate only where a shareholder asserts 'a direct injury to the shareholder distinct and separate from harm caused to the corporation.'" *Golden Tee*, 333 Ark. at 261, 969 S.W.2d at 629.

The most current version of Arkansas Rule of Civil Procedure 23.1 regarding derivative actions reads as follows:

> (a) Prerequisites. This rule applies when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association.
>
> (b) Pleading Requirements. The complaint must be verified and must:

14



(1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;

(2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and

(3) state with particularity:

> (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and

> (B) the reasons for not obtaining the action or not making the effort.

(c) Settlement, Dismissal, and Compromise. A derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders.

The complaint filed on November 24, 2008, by Siddiqui and Horizon, contained the following information:

a. The style of the case, the complaint allegations, and the prayer for relief, all allege that both Siddiqui, individually, as a 50% stockholder, and as an employee of Horizon; and Horizon were the two plaintiffs;

b. That the plaintiffs' unverified complaint is a shareholder's derivative action pursuant to Rule 23.1 of the Arkansas Rules of Civil Procedure;

c. In paragraphs 11, 12, 15, and 16, plaintiffs alleged that the amount of $3,688.27 allegedly misappropriated by Ahmad from Horizon; along with $119,702.13 Ahmad borrowed from Horizon and owed to Horizon, should be delivered to Siddiqui, as per his employment agreement [with Horizon];

d. That plaintiffs' complaint referenced and attached as an exhibit a copy of Siddiqui's employment contract with Horizon, which contains the salary amount and method of calculating other net compensation due Siddiqui as an employee from his employer Horizon.

Ahmad submits that Horizon was admittedly Siddiqui's employer and the entity with which Siddiqui had privity of contract. He asserts that there is no privity of contract alleged or existing between Ahmad, a third party, and Siddiqui. Siddiqui did not sue Horizon for

his claim of compensation that Horizon allegedly owed him. As a result, Ahmad filed a motion to dismiss Siddiqui's and Horizon's joint complaint and supporting brief under Arkansas Rules of Civil Procedure Rules 9, 23.1, 12(b)(6) for failure to state a cause of action, and 12(b)(3) venue stating that the complaint should be dismissed because of:

> a. Improper use of Rule 23.1 including lack of verification, inadequate class representation; attempt to use the action for the individual plaintiffs personal benefit instead of the corporation's benefit; lack of required corporate demand;
>
> b. Rule 9 for failing to state with particularity required for the fraud allegation; and
>
> c. Rule 12(b)(3) improper venue of Independence County, Arkansas, rather than the corporation's principal place of business and registration in Pulaski County.

Ahmad's answer to the complaint set forth the same and additional affirmative defenses as well, but the circuit court denied the motion to dismiss. Ahmad argues that the complaint filed by Horizon and Siddiqui was inadequate on its face and that the circuit court erred in not finding that there was a lack of standing or appropriate pleading to maintain this action, and it also erred in denying Ahmad's motion to dismiss filed in response to the complaint.

We decline to address the underlying merits of Ahmad's argument because he waived the right to appeal this issue by virtue of the settlement contained in the consent judgment. Based upon the pretrial rulings by the circuit court, Ahmad agreed to the settlement contained in the consent judgment. In reading the agreement into the record, Ahmad acknowledged that he understood the terms of the settlement and that he understood that he could not appeal the previous rulings made in these proceedings.

Ahmad's counsel responded as follows to questions by Gregg at the April 17, 2012 hearing when asked what the purpose was for entering into the settlement:

16

MR. GREGG: Based upon what? Things that were already agreed to at the time of the judgment? How final is this judgment?

MR. SATTERFIELD: Not at all.

MR. GREGG: Then what was the purpose of entering it?

MR. SATTERFIELD: Getting out of a tight spot with a jury, with no case, with no evidence and not allowed to go forward in any way, other than to try to resolve it in a way that we could have time later to prove our set offs. And it's contractual. Both parties were sworn in and asked if they understood it and they did. I believe.

Ahmad now asserts that the circuit court erred in denying his motion to dismiss in its November 5, 2009 order, approximately one-and-a-half years before Ahmad agreed to enter into a settlement and stated on the record his understanding that, by entering into the settlement, he waived his right to appeal the previous rulings of the court.

Horizon correctly notes that a litigant who has, voluntarily and with knowledge of all the material facts, accepted the benefits of an order, decree, or judgment of a court, cannot afterwards take or prosecute an appeal or error proceeding to reverse it. *Ark. State Highway Comm'n v. Marlar*, 236 Ark. 385, 366 S.W.2d 191 (1963). A consent judgment is a judgment sanctioned by the court, but one that is comprised of terms and provisions agreed to by the parties. *Selig v. Barnett*, 233 Ark. 900, 350 S.W.2d 176 (1961). Consent excuses error and ends all contention between the parties. *Vaughan v. Brown*, 184 Ark. 185, 40 S.W.2d 996 (1931). It leaves nothing for the court to do, but to enter what the parties have agreed upon, and when so entered, the parties themselves are concluded. *Id.*

Ahmad knowingly entered into a consent judgment, with the advice of counsel, and accepted the benefits afforded by that judgment. He cannot now challenge the circuit court's rulings, which predated the consent judgment, on appeal.

Affirmed.

BROWN, J., agree.

VAUGHT, J., concurs.

**LARRY D. VAUGHT, Judge, concurring.** I agree that this case should be affirmed. I write separately to address the issue of the requested recusal of the special master. While I cannot vote to reverse based on our standard of review and the great discretion afforded to judges in the matter of recusal, I must express my discomfort in the way this case was handled.

In this day and age when lawyers and the legal system as a whole are treated with suspicion by many of our fellow citizens, I think lawyers should never accept an appointment as a special master when they have had an attorney-client relationship with one of the parties. Likewise, a circuit judge should never appoint a master who the judge knows has had such a relationship. The "appearance of impropriety" is a part of our Code of Judicial Conduct, and while appearances are in the eyes of the beholder, we should all maintain the highest standards.

*Satterfield Law Firm, PLC*, by: *Guy "Randy" Satterfield*, for appellant.

*Murphy, Thompson, Arnold, Skinner & Castleberry*, by: *Tom Thompson* and *Casey Castleberry*, for appellees.